IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KELVIN BANKS, ALISON BEAVERS,    )    CIVIL NO. 11-00798 LEK-KSC
DAVID "FLYING WITH EAGLES"        )
BEVETT, CHARLES W. DICKEY,        )
MARCEAU DOZE-GUILLORY, EDWARD     )
MANIGAULT, TAMANEE MUNDY,         )
WANDA THOMAS, SYLVIA VEGA,        )
and CHINY WANG,                   )
                                  )
          Plaintiffs,             )
                                  )
     vs.                          )
                                  )
JOHN McHUGH, SECRETARY            )
DEPARTMENT OF THE ARMY;           )
LEON E. PANETTA, SECRETARY,       )
DEPARTMENT OF DEFENSE,            )
                                  )
          Defendants.             )
_____ )


**ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL OR
SUMMARY JUDGMENT ON PLAINTIFF ALISON BEAVERS' CLAIMS**

          Before the Court is Defendant Secretary of the Army

John M. McHugh's ("Defendant") Motion for Dismissal or Summary

Judgment on Plaintiff Alison Beavers' Claims ("Motion"), filed on

March 13, 2014.  [Dkt. no. 58.]  Plaintiff Alison Beavers

("Beavers") filed her memorandum in opposition on May 29, 2014,[1]

_____

          [1] On that same day, Beavers also filed her Point-By-Point
Response to Defendant's Concise Statement in Support of Summary
Judgment Motion ("Point-By-Point Response"), Rebuttal to Concise
Statement of Material Facts ("Rebuttal CSOF"), and Exhibits 1-14
("Beavers Exhibits"), attached to the Declaration of Anthony P.X.
Bothwell ("Bothwell Decl.").  [Dkt. nos. 95-1, 95-3 to 95-17.]
On June 19, 2014, the Court issued an order ("6/19/14 Order")
striking these documents, as well as limiting the use of the
section of Beavers's memorandum in opposition, titled,
                                                  (continued...)

and Defendant filed his reply on June 2, 2014. [Dkt. nos. 95, 96.] This matter came on for hearing on June 16, 2014. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendant's Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

Beavers, along with Plaintiffs Kelvin Banks, David "Flying with Eagles" Bevett, Charles W. Dickey, Marceau Doze-Guillory, Edward Manigault, Tamanee Mundy, Wanda Thomas, Sylvia Vega, and Chiny Wang (collectively "Plaintiffs"), filed their complaint ("Complaint") on December 30, 2011 against Defendant, as well as Secretary of the Department of Defense, Leon E. Panetta, and Robert Gates.[2] Plaintiffs, all past or present medical staff at Tripler Army Medical Center in Honolulu ("Tripler"), [Complaint at ¶¶ 2-3, 25-27,] allege the following claims: discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-1, *et seq.* ("Count I"); retaliation in violation of Title VII ("Count II"); and discrimination and retaliation in violation of the Equal Protection Clause of the

_____

[1](...continued)
"Plaintiff's Concise Statement of Material Facts" ("Beavers CSOF Section").

[2] Plaintiffs voluntarily dismissed the case against Robert Gates on June 16, 2012. [Dkt. No. 34.]

2

Fifth Amendment ("Count III"). Plaintiffs seek the following relief: compensatory damages; removal of derogatory material from their personnel files; disciplinary measures against the officers, managers, and supervisors named in the Complaint; attorneys' fees; and all other appropriate relief. [Id. at pgs. 19-20.]

On September 28, 2012, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Sever Plaintiffs' Claims ("9/28/12 Order").[3] [Dkt. no. 40.[4]] In the 9/28/12 Order, the Court: dismissed Count III, finding it was preempted by Title VII; dismissed Plaintiff Manigault's claims since it found that, as active duty military personnel, his claims were not covered by Title VII; dismissed all claims against Defendant Panetta for failure to state a claim; and severed Plaintiff Thomas's claims. 2012 WL 4715162, at *6-10.

In the instant Motion, Defendant seeks dismissal or summary judgment on all claims by Beavers in the Complaint.

Beavers, who is Korean and African American, worked as a civilian nurse in the emergency department under the supervision of Colonel Kenneth Batts ("Col. Batts"), Captain

---

[3] Defendants filed the Motion to Dismiss and Sever on May 25, 2012. [Dkt. no. 25.]

[4] The 9/28/12 Order is also available at 2012 WL 4715162.

Kelly ("Capt. Kelly"), and Major Meek ("Maj. Meek"). She alleges that, on October 30, 2007, someone left a "hate letter" ("Anonymous Letter") in her locker, describing Beavers as "like a snake." When Beavers reported the incident, she alleges, no serious investigation took place and the primary suspect, Sargent Tim Hawkins ("Sgt. Hawkins"), was never interviewed about the matter. Further, Beavers alleges that Col. Batts and Capt. Kelly harassed African American employees, and that there was a racist atmosphere at Tripler that was tolerated by management. Beavers claims that Maj. Meeks issued her an unwarranted notice of proposed suspension and he transferred her to an undesirable work shift, and that, on May 15, 2008, she was constructively discharged. [Complaint at ¶¶ 34-39.]

## **DISCUSSION**

### I. **Exhaustion under Title VII**

As a threshold matter, Defendant argues Beavers's allegations should be dismissed in their entirety because Beavers failed to consult with an equal employment opportunity ("EEO") counselor within forty-five days of the alleged discriminatory events, as required by 29 C.F.R. § 1614.105(a)(1). [Mem. in Supp. of Motion at 6-11.]

This Court has explained that failure to contact a counselor within the required time frame can be dispositive:

> 29 C.F.R. § 1614.105(a)(1) requires a federal
> employee who believes that she has been subjected

> to . . . discrimination in the workplace to
> initiate contact with an EEO counselor within
> forty-five days of the alleged discrimination.
> The forty-five day period, however, is "subject to
> waiver, estoppel and equitable tolling." <u>See</u> 29
> C.F.R. § 1614.604(c). If waiver, estoppel or
> equitable tolling does not apply, failure to
> comply with § 1614.105(a)(1) is "fatal to a
> federal employee's discrimination claim in federal
> court." <u>Kraus v. Presidio Trust Facilities
> Div./Residential Mgmt. Branch</u>, 572 F.3d 1039, 1043
> (9th Cir. 2009) (citations and internal quotation
> marks omitted).

<u>Maruqame v. Napolitano</u>, Civil No. 11-00710 LEK-BMK, 2013 WL
4608079, at *9 (D. Hawai`i Aug. 28, 2013).

While timely filing of an administrative complaint is
"not a jurisdictional prerequisite to suit in federal court," it
is a necessary requirement, "subject to waiver, estoppel and
equitable tolling." "Equitable estoppel focuses on the
defendant's wrongful actions preventing the plaintiff from
asserting his claim." <u>Leong v. Potter</u>, 347 F.3d 1117, 1123 (9th
Cir. 2003). "Equitable tolling focuses on a plaintiff's
excusable ignorance and lack of prejudice to the defendant." <u>Id.</u>

Beavers contacted an EEO official on May 14, 2008.
[Def.'s Concise Statement in Support of Def.'s Motion for
Dismissal or Summary Judgment of Pltf. Alison Beavers' Claim,
filed 3/13/14 (dkt. no. 59) ("Def.'s CSOF"), Decl. of Annette
Perry ("Perry Decl."), Exh. 8 (Formal Complaint of
Discrimination, dated July 10, 2008 ("EEO Complaint")) at Box
12c.] At that time, she raised: 1) the Anonymous Letter from

October 2007; 2) her reassignment to an allegedly less-desirable shift by Maj. Meek on March 25, 2008; and 3) notification by Maj. Meek of a suspension on April 7, 2008.[5] [Id.] Neither the Anonymous letter, nor the shift change are within the forty-five day window as required by regulation, and Beavers does not argue that they are. See Reply at 4-5.

Instead, Beavers appears to argue that Defendant should be equitably estopped from asserting an exhaustion defense. She states that she "filed her EEO charge when she learned about administrative complaint procedures that Defendant had concealed from her." [Mem. in Opp. at 11.] She provides no legal or factual support for her claim. At the hearing on the Motion, her counsel argued that Maj. Meek prevented Beavers from asserting her claim. He appeared to be referring to Beavers's claim that Maj. Meek told her to "sweep this under the rug once and for all," [Perry Decl., Exh. 1 (Trans. of Fact Finding Conference

---

[5] There is an inconsistency between the date of the notice of suspension between the EEO Complaint and Beavers's interrogatory responses. In the EEO Complaint, Beavers wrote that she was notified of the suspension on April 7, 2008; [EEO Complaint at 1;] in her interrogatory responses, she responded that she was notified on March 7, 2008 [Perry Decl., Exh. 26 (Pltf. Alison Beavers' Response to Interrogatories (First Set) ("Interrog. Resps.")) at 2]. In making his exhaustion argument, Defendant uses the March date, [Mem. in Supp. of Motion at 9,] and Beavers does not dispute the point. However, the Court views the evidence in the light most favorable to the non-moving party. For that reason, the Court will assume for the purpose of this order that the notice of suspension occurred on April 7, 2008, and thus that claim is not dismissed for failure to exhaust.

("FFC"), excerpts of Alison Beavers testimony ("Def.'s Beavers FFC Trans.")) at 22-23,][6] and the allegation in her EEO Complaint that "[b]eginning 18 April 2008, MAJ Meek obstructed my right to assistance/representation of counsel in attempting to respond to the suspension proposal" [EEO Complaint at 1-2.]

Even viewing the evidence in the light most favorable to Beavers, neither of these claims create a genuine issue of material fact that Maj. Meek wrongfully prevented Beavers from asserting her claims. See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) (at summary judgment, the Court "must determine, viewing the facts in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law" (citation and quotation marks omitted)).

First, Plaintiff argues that Maj. Meek told her to sweep the Anonymous Letter incident under the rug. [Mem. in Opp. at 5.] Beavers's complete testimony, regarding her conversation with Maj. Meek was,

---

[6] Insofar as the Court considers evidence outside of the Complaint, that was neither attached to or referred to in the Complaint, it treats the portion of the Motion seeking dismissal for failure to exhaust as one for summary judgment under Rule 56, and applies summary judgment standards. See Fed. R. Civ. P. 56(d); Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 n.6 (9th Cir. 2010) (when materials are considered outside of the complaint the "motion should be converted into one for summary judgment").

> I said since this hate letter I discussed, I said,
> I just feel that people feel like they could treat
> and talk to me any way they want, that – like it's
> an overall consensus, you know.  I don't
> understand, I said, the ignorance about it.  And
> then his response was, you know, well, we've went
> over it.  I told you what the provost marshal
> could do about it, which wasn't really anything,
> that the extent was the Reader's Digest version,
> and then what can we do to help sweep this under
> the rug once and for all.

[Def.'s Beavers FFC Trans. at 22-23.]  As defense counsel argued

at the hearing, this statement, in its entirety, does not support

Beavers's argument.  In it, Beavers states that she believes that

the investigation of the Anonymous Letter was incomplete; but

Maj. Meek responds that he did all that he could.  He does not

mention the EEO process or in any way discourage Beavers from

pursuing an EEO complaint, and instead asks her what he can do to

put the incident behind them.  If she interpreted his statement

as an attempt to silence her, an EEO complaint would have been a

prudent course of action.  It does not appear from anything in

the record that Maj. Meek "concealed" the EEO process from

Beavers.[7]  [Mem. in Opp. at 11.]

Also, Beavers does not – in her EEO Complaint, the

court Complaint, or her memorandum in opposition – provide any

evidence for the claim made in the EEO Complaint that Maj. Meek

---

[7]  Even assuming, *arguendo*, that the Court had not struck
Beavers's documents, the Court would still find that nothing in
the record supports Beavers's claim that Maj. Meeks concealed the
complaint process.

obstructed her right to counsel. [EEO Complaint at 1-2.]

Further, she has not rebutted the evidence offered by Defendant

that the EEO process was well-publicized. Defendant provides

evidence that "all requisite annual EEO training was current" and

that "EEO quarterly in-service training was conducted in April

2008." [Def.'s CSOF ¶ 10 (citing Perry Decl. Exhs. 2 (Trans. of

FFC, excerpts of Maj. Meek testimony ("Def.'s Meek FFC Trans."))

at 163-64; and 3 (Trans. of FFC, excerpts of Capt. Kelly

testimony ("Def.'s Kelly FFC Trans.")) at 135-36).] Thus,

Beavers has not raised any genuine issue of material fact that

Maj. Meek concealed the EEO process from her, and that Defendant

should be equitably estopped from raising an exhaustion defense.

Beavers also appears to argue that exhaustion would

have been futile. [Mem. in Opp. at 1.] The Court questions

whether this is a proper exception to the Title VII exhaustion

requirement. See You v. Longs Drugs Stores Cal., LLC, 937 F.

Supp. 2d 1237, 1250-51 (D. Hawai`i 2013) ("Plaintiffs have cited

no case authority for their extraordinary proposition, and my own

research has not located any substantial support for the creation

of a 'futility' exception to the Title VII exhaustion

requirement, and certainly no support for the assertion that the

administrative process may be disregarded in its entirety."

(quoting Murphy v. West, 945 F. Supp. 874, 876 (D. Md. 1996),

*aff'd on other grounds*, 172 F.3d 863 (4th Cir. 1999))).

Even if it were, Beavers's support for the claim is insufficient to create a genuine issue of material fact. The only evidence she provides to support her futility argument is a statement from her attorney's declaration that "[t]he EEOC mediator of Tripler cases repeatedly said the EEOC district strongly disfavors employees and that it would see no bias in a 'hate letter' . . . ." [Mem. in Opp., Decl. of Anthony P.X. Bothwell ("Bothwell Decl.") at ¶ 6.]

However, this statement does not meet the standard for proving futility applied in other administrative contexts. For example, in appeals from the Interior Board of Indian Appeals, the Ninth Circuit has held: "In considering a motion to dismiss for failure of jurisdiction, the district court may not deem [a]dministrative review . . . futile if the plaintiff's allegations of bias are purely speculative." Anderson v. Babbitt, 230 F.3d 1158, 1164 (9th Cir. 2000) (citation and internal quotation marks omitted).

The Ninth Circuit and district courts within this circuit have applied similar standards in other administrative contexts. See, e.g., Leorna v. U.S. Dep't of State, 105 F.3d 548, 552 (9th Cir. 1997) ("[Plaintiff's] claim that it became futile for her to 'continue' to comply with the administrative complaint procedures is meritless because she did not even attempt to initiate the EEO administrative complaint process

until" after the required reporting date.); <u>Taylor v. Def. Fin. &</u>
<u>Accounting Serv.</u>, No. CIV. 2:12-2466 WBS DAD, 2014 WL 28820, at
*6 (E.D. Cal. Jan. 2, 2014) ("[t]he futility exception applies
only when there is a certainty of an adverse decision or further
pursuit of administrative remedies would be clearly useless"
(alteration in <u>Taylor</u>) (citations and quotation marks omitted));
<u>Robinson v. Salazar</u>, 885 F. Supp. 2d 1002, 1035 (E.D. Cal. 2012)
("Whether exhaustion of remedies would be 'futile' means whether
'nothing could be gained from permitting further administrative
proceedings.'" (quoting <u>Anderson</u>, 230 F.3d at 1164)).  Beavers's
counsel's statement regarding bias is speculative, and does not
raise a genuine issue of material fact that timely filing would
have been "clearly useless."

Since Beavers's equitable estoppel and futility
arguments do not create a genuine issue of material fact, and
Beavers concedes that she did not contact an EEO counselor before
the required deadline, this Court finds that Beavers failed to
exhaust her administrative remedies under Title VII.  Thus, the
Court GRANTS the Motion for failure to exhaust administrative
remedies, with the exception of Beavers's wrongful notice of
suspension claim, <u>see</u> *supra* n.5.  Fed. R. Civ. P. 56 ("The court
shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law.").

## II.  **Substantive Title VII Claims**

The Court considers here Beavers's claim of a wrongful notice of suspension.  In addition, even though the Court grants the Motion as to Beavers's other claims on the basis of exhaustion, it considers here the substance of Beavers's claims for completeness.

The Ninth Circuit has stated:

> In 1972, Congress amended Title VII of the Civil Rights Act of 1964 to extend its coverage to federal employees.  As amended, § 717 of the Civil Rights Act, codified at 42 U.S.C. § 2000e-16, "provides that all personnel actions affecting federal employees and applicants for federal employment shall be made free from any discrimination based on race, color, religion, sex, or national origin," and "establishes an administrative and judicial enforcement system." Brown v. Gen. Servs. Admin., 425 U.S. 820, 829-30, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976) (internal quotation marks omitted). . . .

Kraus, 572 F.3d at 1043.[8]

Courts analyze Title VII discrimination claims and retaliation claims under the burden-shifting analysis set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973).  See, e.g., Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (discrimination); Dawson v. Entek Int'l, 630 F.3d 928, 936

---

[8] The Court notes that, although Plaintiff requests that the Court apply international law to decide this case, see, e.g., Mem. in Opp. at 8, the Court chooses not to, in particular, because Title VII and the United States courts have provided ample guidance to answer the legal issues Beavers has presented here.

(9th Cir. 2011) (retaliation).

In examining the employer's proffered reasons for the adverse employment action, "it is not important whether they were *objectively* false . . . . Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1063 (9th Cir. 2002) (emphasis in <u>Villiariamo</u>) (citation and internal quotation marks omitted).

## A. **Discrimination**

> To establish a prima facie case, a plaintiff "must offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220 (9th Cir. 1998) (alteration in original), citing <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

<u>Hawn</u>, 615 F.3d at 1156. Plaintiff has the initial burden of establishing a prima facie case of discrimination. <u>See McDonnell</u>, 411 U.S. at 802; <u>Villiarimo</u>, 281 F.3d at 1062. The degree of proof required to establish a prima facie case on summary judgment is minimal. <u>Villiarimo</u>, 281 F.3d at 1062. In carrying his burden, a plaintiff "may rely on circumstantial evidence, rather than direct evidence of pretext. But if he does, 'such evidence must be both specific and substantial.'" <u>Galloway v. Mabus</u>, No. 11-cv-0547 BEN (NLS), 2013 WL 435932, at *5 (S.D. Cal. Feb. 4, 2013) (quoting <u>Villiarimo</u>, 281 F.3d at

1062).

A plaintiff may prove discrimination through either discrete discriminatory acts or by showing an overall hostile work environment.  Examples of discrete acts are termination, failure to promote, denial of transfer, or refusal to hire. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). On the other hand, "[h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  The unlawful employment practice therefore cannot be said to occur on any particular day."  Id. (citations and internal quotation marks omitted).  They develop "'over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'"  Wilkie v. Robbins, 551 U.S. 537, 582 (2007) (quoting Nat'l R.R., 536 U.S. at 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106).

"The Supreme Court has held that '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.'"  Dominquez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1034 (9th Cir. 2005) (alteration in Dominquez-Curry) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

> "[T]he working environment must both subjectively
> and objectively be perceived as abusive."  [Fuller

14

> > v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.
> > 1995)] (citing Harris Forklift Sys., Inc., 510
> > U.S. 17, 20-21, 114 S. Ct. 367, 126 L. Ed. 2d 295
> > (1993)).  Objective hostility is determined by
> > examining the totality of the circumstances and
> > whether a reasonable person with the same
> > characteristics as the victim would perceive the
> > workplace as hostile.  Id.  Finally, to find a
> > violation of Title VII, "conduct must be extreme
> > to amount to a change in the terms and conditions
> > of employment." Faragher [v. City of Boca Raton],
> > 524 U.S. [775,] 788, 118 S. Ct. 2275 [(1998)]; see
> > also Fuller, 47 F.3d at 1527.

Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir.

2007).  "Factors a court may consider are the frequency of the

discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work

performance." Nat'l R.R., 536 U.S. at 116 (citation and internal

quotation marks omitted).

    Regarding claims of a hostile work environment, this

Court has explained,

> > "Title VII is not 'a general civility code for the
> > American workplace.'" Jura v. Cnty. of Maui, Civ.
> > No. 11-00338 SOM/RLP, 2012 WL 5187845, at *7 (D.
> > Hawaii Oct. 17, 2012) (quoting Oncale v. Sundowner
> > Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct.
> > 998, 140 L. Ed. 2d 201 (1998)).  Moreover,
> > "'personal animosity is not the equivalent of sex
> > [or race] discrimination,' and a plaintiff 'cannot
> > turn a personal feud into a sex [or race]
> > discrimination case.'" Id. (quoting Succar v.
> > Dade Cnty. Sch. Bd., 229 F.3d 1343, 1345 (11th
> > Cir. 2000)).

Phillips v. Mabus, Civil No. 12-00384 LEK-RLP, 2013 WL 4662960,

at *19 (D. Hawai`i Aug. 29, 2013) (alterations in Phillips).

Insofar as the Court has stricken Beavers's Point-By-Point Response, the Rebuttal CSOF, and the Beavers Exhibits, <u>see</u> *supra* n.1, Beavers fails to provide any evidence of discrete acts of discrimination or a hostile work environment. Further, Defendant offers evidence that negates any inference of discrimination, and provides legitimate, non-discriminatory reasons for Maj. Meek's actions.

First, there is no evidence that the Anonymous Letter was discriminatory, or that it was perpetrated or condoned by Beavers's supervisors. Though it is strongly-worded, the letter itself is not discriminatory on its face, and the reference to Beavers as a "snake" relates to an attribute of her personality and her relationship with her colleagues, not her race.[9] [Perry Decl., Exh. 10 (Anonymous Letter).]

Further, in response to the Anonymous Letter: 1) Maj. Meek and the Provost Marshal's Office ("PMO") initiated an investigation, which found that there was no criminal activity; [Def.'s CSOF at ¶ 8;] 2) Capt. Kelly directed department-wide education and training, and he and Maj. Meek held departmental meetings and spoke with staff individually; [<u>id.</u> at ¶ 9;] 3) Capt. Kelly and Maj. Meek ensured that EEO trainings

---

[9] The section in the Anonymous Letter reads, "If you are that unhappy, QUIT MAKING EVERYBODY ELSE UNHAPPY. No one likes you here, even those who you have had as friends and then turned on like a snake can't stand you." [Perry Decl., Exh. 10 (Anonymous Letter).]

were current and continued to hold regular EEO process trainings;
[id. at ¶ 10;] and 4) the Inspector General ("IG") investigated
the incident upon Beavers's request [id. at ¶ 11].  Thus, there
is no evidence of discrimination in the letter or Defendant's
response to it.

Regarding the reassignment and notice of suspension,
both before and after the Anonymous Letter, there were numerous
complaints from Tripler staff and patients about Beavers's
behavior.  [Id. at ¶¶ 3-6, 12-13 (citing Perry Decl., Exhs. 5-7,
9, 13-18 (various formal and informal complaints)).]  As a result
of these complaints, on March 25, 2008, Maj. Meek temporarily
reassigned Beavers – as permitted as a condition of her
employment – to the day shift to observe her behavior.  [Id. at
¶¶ 14-15.]  Similarly, on March 6, 2008, Maj. Meek provided
Beavers with a notice of proposed suspension for "discourteous
behavior."  [Id. at ¶ 16.]

In sum, there is no "inference of unlawful
discrimination" in the record, see Godwin, 150 F.3d at 1220, and
thus summary judgment is GRANTED as to Beavers's wrongful notice
of suspension claim.  The Court also finds that summary judgment
would be proper for all of Beavers's other claims of
discrimination on this ground, if those claims had been properly
exhausted.

The result is the same, even if the Court were to consider Beavers's improperly offered circumstantial evidence. See 6/19/14 Order. At best, Beavers presents evidence that: 1) she believed that there were shortcomings to the Anonymous Letter investigation; [Bothwell Decl., Exhs. 3 (Beavers's excerpts of FFC Trans. ("Beavers FFC Excerpts"))[10] at 269 (testimony of Sgt. Carlitos Grant, Jr.); 7 (Depo. of Capt. Kelly.) at 67, 8 (11/23/07 email from Beavers), 11 (Depo. of Sgt. Hawkins) at 24;] 2) Maj. Meek may have reassigned Beavers to separate her from colleagues Fred Puleo and Sgt. Hawkins, even though he knew that Beavers preferred to stay on the night shift; [Beavers FFC Excerpts at 42-43, 70 (Meek testimony), 155 (Kelly testimony), 322 (Hawkins testimony); Bothwell Decl., Exh. 9 (9/29/08 Mem. of Record by Maj. Meek);] and 3) Capt. Kelly told Maj. Meek that he wanted to get rid of "slackers" [Beavers FFC

---

[10] Whereas Defendant offered excerpts of each witness's testimony at the FFC as individual exhibits, Beavers offered all of her excerpts as a single exhibit. The Court CAUTIONS both parties that they must excerpt the material in such a way that the Court is easily able to determine who is testifying and understand the context of the offered testimony, and cite to the correct pages and lines of testimony. Otherwise, the Court will not consider the evidence. See Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules") 56.1(c) ("The concise statement shall particularly identify the page and portion of the page of the document referenced. . . . The parties . . . shall ensure that enough of a document is attached to put the matter in context."); (f) (". . . the court shall have no independent duty to review exhibits in their entirety, but rather will review only those portions of the exhibits specifically identified in the concise statements").

Excerpts at 53 (Meek testimony)].  Even all of this evidence

together does not "'give[] rise to an inference of unlawful

discrimination'" regarding the discrete acts.  See Godwin, 150

F.3d at 1220 (citation omitted).

Further, Beavers fails to provide substantial evidence

of severe or pervasive discrimination in the workplace.  To the

contrary, Beavers offers evidence that she was not well liked.

Two co-workers testified that Beavers was the object of

harassment: Sharon Mitsuko Pniel stated that Puleo and Sgt.

Hawkins isolated Beavers and intentionally gave her extra work;

[Beavers FFC Trans. at 245-46, 251;] and Dianna Rowe-Huff stated

that the supervisors "treated [Beavers] differently than they

treated other people" and that she was "one of them" [id. at

304].

This is the only evidence of any purported

discrimination directed toward Beavers, and even these two co-

workers testified that the treatment was based on personality,

not race.  [Id. at 244-45 (Pniel: "It was more or less

personality based. . . .  I don't know if you can say it's

racially 'cause it doesn't come out racially.  Personally, yes.

. . .  I just don't think they liked her."), 246 (Pniel: "So I

can tell you it was personality conflict."), 304 (Rowe-Huff:

"Alison was targeted because she is outspoken . . . .").]

Although, Beavers may have been the only African American civilian nurse, there is no dispute that there were other African American military personnel working with her.[11] [Beavers FFC Trans. at 77 (Meek testimony), 246-47 (Pniel testimony).]

Again, this evidence does not "'give[] rise to an inference of unlawful discrimination.'"  See Godwin, 150 F.3d at 1220 (citation omitted).  Nor does not create a genuine issue of material fact as to whether Tripler was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" See Dominguez-Curry, 424 F.3d at 1034.  While the Court recognizes that the Anonymous Letter and other events surrounding the investigation may have been troubling to Beavers, she presents no evidence that Defendant violated Title VII.  See Oncale, 523 U.S. at 80 (Title VII is not "a general civility code for the American workplace.").

Thus, Beavers's failure to raise a genuine issue of material fact as to discrimination is sufficient ground to grant

_____

[11] The Court gives little, if any, weight to the testimony of co-Plaintiff Kelvin Banks, that he felt there was discrimination at Tripler.  [Beavers FFC Trans. at 286, 289, 292.]  Banks did not testify to any specific discriminatory actions toward Beavers or by her supervisors, or even that she witnessed the incidents he discussed.

the Motion as to Count I, to the extent Beavers claims discrete acts of discrimination and a hostile work environment.

**B.  Constructive Discharge**

Beavers also alleges in Count I that she was constructively discharged.

"A hostile-environment constructive discharge claim entails something more [than simple discrimination]: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign."  Pa. State Police v. Suders, 542 U.S. 129, 147 (2004) (citations omitted).

The Ninth Circuit has held that,

> constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.

> Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000) (internal quotation marks omitted).  We set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable.  Thorne v. City of El Segundo, 802 F.2d 1131, 1134 (9th Cir. 1986); see also Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively

discharged.").

Poland v. Chertoff, 494 F.3d 1174, 1184-85 (9th Cir. 2007)
(footnote omitted).

For the same reasons that Beavers's claims of discrete
acts of discrimination and a hostile work environment fail, so
too does her claim of constructive discharge.  She has provided
no evidence of discrimination or "sufficiently extraordinary and
egregious" working conditions "to overcome the normal motivation
of a competent, diligent, and reasonable employee to remain on
the job to earn a livelihood and to serve his or her employer."
See Brooks, 229 F.3d at 930.  Thus, the Court finds sufficient
ground to grant summary judgment regarding Beavers's claim of
constructive discharge as well.

   C.   **Retaliation**

Defendant argues, *inter alia*, that the Court should
dismiss Count II because Beavers did not engage in any protected
activity.  [Mem. in Supp. of Motion at 22.]  The Court agrees.

The Ninth Circuit has explained that,

> Title VII prohibits an employer from
> discriminating against an employee for opposing an
> unlawful employment practice, such as filing a
> complaint alleging sexual orientation harassment
> and hostile work environment.  Retaliatory
> discharge claims follow the same burden-shifting
> framework described in McDonnell Douglas.  To
> establish a prima facie case, the employee must
> show that he engaged in a protected activity, he
> was subsequently subjected to an adverse
> employment action, and that a causal link exists
> between the two.  See Jordan v. Clark, 847 F.2d

> 1368, 1376 (9th Cir. 1988). The causal link can
> be inferred from circumstantial evidence such as
> the employer's knowledge of the protected
> activities and the proximity in time between the
> protected activity and the adverse action. <u>Id.</u>
> If a plaintiff establishes a prima facie case of
> unlawful retaliation, the burden shifts to the
> defendant employer to offer evidence that the
> challenged action was taken for legitimate,
> non-discriminatory reasons. <u>See</u> <u>Nidds v.</u>
> <u>Schindler Elevator Corp.</u>, 113 F.3d 912, 917 (9th
> Cir. 1996). If the employer provides a legitimate
> explanation for the challenged decision, the
> plaintiff must show that the defendant's
> explanation is merely a pretext for impermissible
> discrimination. <u>See</u> <u>Ray v. Henderson</u>, 217 F.3d
> 1234, 1240 (9th Cir. 2000).

<u>Dawson</u>, 630 F.3d at 936.

Regarding protected activity, 42 U.S.C. § 2000e-

3(a) states, in pertinent part:

> It shall be an unlawful employment practice for an
> employer to discriminate against any of his
> employees . . . because he has opposed any
> practice made an unlawful employment practice by
> this subchapter, or because he has made a charge,
> testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under
> this subchapter.

"For an employee's 'opposition' to be protected, the

employer's conduct which the employee opposed 'must fairly fall

within the protection of Title VII to sustain a claim of unlawful

retaliation.'" <u>Werner v. Advance Newhouse P'ship, LLC</u>, No.

1:13-CV-01259-LJO-JLT, 2013 WL 4487475, at *3 (E.D. Cal. Aug. 19,

2013) (quoting <u>Learned v. Bellevue</u>, 860 F.2d 928, 932 (9th Cir.

1988)). "Protected activity includes the filing of a charge or a

complaint, or providing testimony regarding an employer's alleged

unlawful practices, as well as engaging in other activity intended to 'oppose[]' an employer's discriminatory practices." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003) (alteration in Raad) (quoting 42 U.S.C. § 2000e-3(a)). "If a person has been subjected to only an isolated incident, a complaint about that incident does not constitute protected activity unless a reasonable person would believe that the isolated incident violated Title VII." E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 963 (9th Cir. 2009). Failure to raise a genuine dispute of material fact as to engagement in a protected activity is sufficient ground for granting summary judgment. See, e.g., Klat v. Mitchell Repair Info. Co., 528 F. App'x. 733 (9th Cir.), cert. dismissed, 134 S. Ct. 625 (U.S. 2013).

The participation clause only prohibits retaliation against persons who participate in the EEO process. See, e.g., Greisen v. City of N. Las Vegas, 251 F. App'x 462, 463 (9th Cir. 2007) (citing Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir. 1990)). "An employee's 'participation' in the EEOC process is protected from retaliation whether or not the charge filed with the EEOC is meritorious." Abramson v. Univ. of Haw., 594 F.2d 202, 211 (9th Cir. 1979).

Beavers argues that she suffered adverse actions, specifically, "refusing to seriously investigate the hate letter

24

even when suspects were known, suddenly taking [Beavers] off her

long-accustomed night shift, and threatening suspension when

[Beavers] had done no wrong" after she "complained in vain to MAJ

Meek, CAPT Kelly, the Provost Marshall and others." [Mem. in

Opp. at 12.] All of these complaints relate to the Anonymous

Letter and its investigation. However, Beavers has offered no

evidence that she ever raised any issue of discrimination, let

alone anything actionable under Title VII. The only evidence

Beavers cites (again, assuming it had been properly submitted),

does not show any claim of discrimination. Also, Beavers's

formal request to the Inspector General for further investigation

of the Anonymous Letter does not mention discrimination, and

instead requests conflict resolution training for her unit and

that Beavers and Maj. Meek be supported in "hav[ing] a better

colleague rapport[.]" [Perry Decl., Exh. 11 (Inspector General

Action Request).] There is no genuine issue of material fact

suggesting that a reasonable person would believe that these

complaints were protected activity under Title VII. See Go

Daddy, 581 F.3d at 963. Thus, summary judgment could be granted

on Count II for this reason alone.[12] See, e.g., Klat, 528 F.

---

[12] Alternatively, the Court finds that Beavers fails to
rebut Defendant's evidence of a legitimate, non-discriminatory
reason for her reassignment – related to co-worker and patient
complaints and interpersonal conflict with colleagues – some of
which Beavers herself cites in her memorandum in opposition. See
Mem. in Opp. at 4-5.

App'x at 733.

**III. <u>Summary</u>**

The Court FINDS that there is no genuine issue of material fact that Beavers has not exhausted her administrative remedies under Title VII and therefore GRANTS the Motion, with the exception of Beavers's claim for wrongful notice of suspension. The Court GRANTS Defendant's Motion insofar as Beavers's fails to raise a genuine issue of material fact that her notice of suspension was discriminatory. Even if she had exhausted her administrative remedies as to all other claims, Beavers was not discriminated against or retaliated against by Defendant within the meaning of Title VII. The Court reaches this conclusion because Beavers has failed to rebut Defendant's CSOF or assert her own undisputed facts. Even if the Court considered all of the evidence Beavers improperly included, Beavers has failed to raise any genuine issue of material fact, and thus summary judgment is warranted.

**<u>CONCLUSION</u>**

On the basis of the foregoing, Defendant's Motion for Dismissal or Summary Judgment on Plaintiff Alison Beavers' Claims, filed March 13, 2014, is HEREBY GRANTED in its entirety. The Court directs the Clerk's Office to terminate Beavers as a party.

IT IS SO ORDERED.

26

DATED AT HONOLULU, HAWAII, June 30, 2014.



      /s/ Leslie E. Kobayashi
     Leslie E. Kobayashi
     United States District Judge

**KELVIN BANKS, ET AL. VS. JOHN M. MCHUGH, ET AL.; CIVIL 11-00798 LEK-KSC; ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL OR SUMMARY JUDGMENT ON PLAINTIFF ALISON BEAVERS' CLAIMS**