IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KELVIN BANKS, ALISON BEAVERS, )    CIVIL NO. 11-00798 LEK-KSC
DAVID "FLYING WITH EAGLES"      )
BEVETT, CHARLES W. DICKEY,       )
MARCEAU DOZE-GUILLORY, EDWARD )
MANIGAULT, TAMANEE MUNDY,        )
WANDA THOMAS, SYLVIA VEGA,       )
and CHINY WANG,                  )
                                 )
          Plaintiffs,            )
                                 )
     vs.                         )
                                 )
JOHN McHUGH, SECRETARY           )
DEPARTMENT OF THE ARMY;          )
LEON E. PANETTA, SECRETARY,      )
DEPARTMENT OF DEFENSE,           )
                                 )
          Defendants.            )
_____ )


**ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND
SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF CHARLES
DICKEY; AND GRANTING DEFENDANT'S MOTION FOR DISMISSAL
<u>AND SUMMARY JUDGMENT ON THE CLAIMS OF DAVID BEVETT</u>**

     Before the Court are: Defendant Secretary, Department

of the Army, John M. McHugh's ("Defendant") Motion for Dismissal

and Summary Judgment on the Claims of Plaintiff Charles Dickey,

filed on April 11, 2014 ("Dickey Motion"); and Defendant's Motion

for Dismissal or Summary Judgment on the Claims of David Bevett,

filed on April 23, 2014 ("Bevett Motion," together "Motions").

[Dkt. nos. 67, 70.]  Plaintiff Charles W. Dickey ("Dickey") filed

his memorandum in opposition on June 7, 2014, and Plaintiff David

"Flying with Eagles" Bevett ("Bevett") filed his memorandum in

opposition on June 7, 2014 as well.[1]  [Dkt. nos. 97, 98.]

Defendant filed his reply in support of the Bevett Motion on

June 13, 2014 and his reply in support of the Dickey Motion on

June 16, 2014.  [Dkt. nos. 99, 101.]  The Court finds these

matters suitable for disposition without a hearing pursuant to

Rule LR7.2(d) of the Local Rules of Practice of the United States

District Court for the District of Hawai`i ("Local Rules").

After careful consideration of the Motions, supporting and

opposing memoranda, and the relevant legal authority, Defendant's

Motions are HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

The procedural facts of this case were set forth in

this Court's June 30, 2014 Order Granting Defendant's Motion for

---

[1] Also on June 7, 2014, Bevett filed his Response to
Defendant's Statement of Material Fact Regarding Claims of David
Bevett ("Bevett CSOF Response") and Exhibits 1-19 ("Bevett
Exhibits"), attached to the Declaration of Anthony P.X. Bothwell
("Bothwell Bevett Declaration").  [Dkt. nos. 97-1 to 97-21.]  On
July 31, 2014, the Court issued an order ("Strike Order")
striking these documents, as well as limiting the use of the
section of Bevett's memorandum in opposition titled "Plaintiff's
Concise Statement of Material Facts" ("Bevett CSOF Section").
[Dkt. no. 122.]

On June 7, 2007, Dickey filed his Response to Defendant's
Statement of Material Fact Regarding Claims of Charles W. Dickey
("Dickey CSOF Response"), the Declaration of Charles W. Dickey
("Dickey Declaration"), and Exhibits 1-7 ("Dickey Exhibits"),
attached to another Declaration of Anthony P.X. Bothwell
("Bothwell Dickey Declaration").  [Dkt. nos. 98-1 to 98-10.]  In
the Strike Order, the Court also struck these documents, as well
as limited the use of the section of Dickey's memorandum in
opposition titled "Plaintiff's Concise Statement of Material
Facts" ("Dickey CSOF Section").

Dismissal or Summary Judgment on Plaintiff Alison Beavers' Claims ("Beavers Order").[2]  [Dkt. no. 112.]  The original plaintiffs filed their complaint on December 30, 2011 ("Complaint").[3]

Bevett, a retired Army medical officer, alleges that he applied in early 2011 for three civilian psychologist positions at Tripler Army Medical Center in Honolulu ("Tripler").  He claims that he was well-qualified but that he was not given fair consideration for the positions due to his race – Native American and African American – and color, and in retaliation for past complaints he had made regarding discrimination.  Bevett further alleges that he timely complained to the Army Equal Employment Opportunity ("EEO") office at the Schofield Barracks, but no serious investigation resulted and this failure was due to his race.  [Complaint at ¶¶ 40–45.]

Dickey, who is African American, worked as a nursing assistant in a surgical ward starting in 1985, then as a medical instrument technician in the cardiology department from 1995 to 2010.  His supervisors were Lieutenant Colonel Thomas Dove ("LTC Dove") and Dr. Michael Illovsky ("Dr. Illovsky").  Dickey alleges that he suffered regular harassment and that his work

---

[2] The Beavers Order is also available at 2014 WL 2932479.

[3] One case, that of Plaintiff Wanda Thomas, was severed from the original case.  See Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Sever Plaintiffs' Claims, 2012 WL 4715162 (D. Hawai`i Sept. 28, 2012) ("9/28/12 Order").

environment was so racially hostile that he took early retirement on December 27, 2010.  He further alleges that, in January 2011, he complained to the Army EEO office regarding the work conditions at Tripler, but the EEO representative did not assist him, and did not process his complaint until March; the EEO later rejected his claims for investigation.  [Id. at ¶¶ 46-54.]

Bevett and Dickey allege the following claims: discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-1, *et seq*. ("Count I"); and retaliation in violation of Title VII ("Count II").[4]  They seek the following relief: compensatory damages; removal of derogatory material from their personnel files; disciplinary measures against the officers, managers, and supervisors named in the Complaint; attorneys' fees; and all other appropriate relief.  [Id. at pgs. 19-20.]

In the instant Motions, Defendant seeks dismissal or summary judgment on all claims by Dickey and Bevett in the Complaint.

---

[4] The Court dismissed their third claim, for discrimination and retaliation in violation of the Equal Protection Clause of the Fifth Amendment ("Count III"), in the 9/28/12 Order, reasoning that it was preempted by Title VII.  2012 WL 4715162, at *6.

4

**DISCUSSION**

I.   **Bevett Motion**

Bevett alleges that he applied for three psychologist positions in 2011, but he was not fairly considered because of his race and in retaliation for past complaints he had made about discrimination. [Complaint at ¶¶ 41-42.] Bevett, however, has made no showing that he can establish a prima facie case of discrimination or retaliation. See, e.g., Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (describing plaintiff's burden in discrimination case; Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011) (burden in retaliation case).

   A.   **Discrimination**

The Beavers Order sets forth the applicable framework for Title VII claims, as well as the burdens of proof and standards for proving discrimination. See 2014 WL 2932479, at *5-6. The Court incorporates that discussion into this order by reference.

Bevett's sole claim is for non-selection to the three civilian positions in 2011.[5] See Complaint at ¶¶ 40-45. This

_____

   [5] Bevett appears to raise, in his memorandum in opposition, additional positions in other years, which he was not selected for due to race. See, e.g., Mem. in Opp. at 1 (regarding Tripler applications "since 2006"), 9 ("Bevett was passed over when he applied for a position in a program evaluating military children in Hawaii schools."). Insofar as these positions and non-
(continued...)

**DISCUSSION**

I.   **Bevett Motion**

Bevett alleges that he applied for three psychologist positions in 2011, but he was not fairly considered because of his race and in retaliation for past complaints he had made about discrimination. [Complaint at ¶¶ 41-42.] Bevett, however, has made no showing that he can establish a prima facie case of discrimination or retaliation. See, e.g., Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (describing plaintiff's burden in discrimination case; Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011) (burden in retaliation case).

   A.   **Discrimination**

The Beavers Order sets forth the applicable framework for Title VII claims, as well as the burdens of proof and standards for proving discrimination. See 2014 WL 2932479, at *5-6. The Court incorporates that discussion into this order by reference.

Bevett's sole claim is for non-selection to the three civilian positions in 2011.[5] See Complaint at ¶¶ 40-45. This

_____

   [5] Bevett appears to raise, in his memorandum in opposition, additional positions in other years, which he was not selected for due to race. See, e.g., Mem. in Opp. at 1 (regarding Tripler applications "since 2006"), 9 ("Bevett was passed over when he applied for a position in a program evaluating military children in Hawaii schools."). Insofar as these positions and non-

(continued...)

district court has stated that a plaintiff must prove the following elements to establish a prima facie non-selection claim:

> (1) he belongs to a protected class, (2) he applied for and was qualified for a job which the employer was seeking applicants, (3) he was rejected despite his qualifications, and (4) "the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff."

Johnson v. State of Haw. Dep't of Educ., Civil No. 11-00704 ACK-RLP, 2013 WL 3354559, at *10 (D. Hawai`i July 2, 2013) (footnote omitted) (some citations omitted) (quoting Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005)).

Defendant has offered evidence that there is no genuine issue of material fact as to whether the Army filled the positions with employees not of plaintiff's protected class, and

---

[5](...continued)
selection events are not alleged in the Complaint and Bevett provides no evidence, other than the claim in his interrogatory responses that he "timely complained to the EEO Office" without specifying dates, locations, or the positions he had applied for, [Def.'s Concise Statement of Material Fact Regarding Claims of David Bevett, filed 4/23/14 (dkt. no. 71) ("Def.'s Bevett CSOF"), Decl. of Annette Perry ("Perry Bevett Decl."), Exh. 4 (David "Flies with Eagles" Bevett's Response to Interrogatories (First Set) ("Bevett Interrog. Resps.")) at 7,] the Court finds that these claims were waived. See Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court" (citations omitted)).

Bevett does not rebut that evidence. Specifically, the evidence shows that the positions were never filled at all.

On January 10, 2011, MEDCELL (an Army hiring office on the mainland) announced an opening for two clinical psychologist positions. MEDCELL added qualified candidates, including Bevett, to a secure, online database called Medic. [Def.'s Bevett CSOF at ¶¶ 2-3.[6]] However, on April 9, 2011, due to appropriations limitations, Medic and the job openings were closed, and the applications for the two positions were no longer considered. Bevett did not apply to new announcements for similar positions, issued on July 15, 2011, under new appropriations. [<u>Id.</u> at ¶ 4.] Similarly, the third position that Bevett applied for, to be a supervisory counseling psychologist at the Army Substance Abuse Program ("ASAP"), was announced on February 18, 2011, but it was cancelled without being filled. [<u>Id.</u> at ¶ 6.]

Since the positions were never filled, Bevett cannot show that he was rejected or that the positions were filled with individuals outside of his protected class as required to make a

---

[6] Since Bevett did not properly oppose Defendant's Bevett CSOF, <u>see</u> Strike Order, the facts in Defendant's Bevett CSOF are deemed admitted. <u>See</u> Local Rule LR56.1(g) ("For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.").

prima facie case of non-selection.[7]  See Dominguez-Curry, 424

F.3d at 1037.  Thus, summary judgment is GRANTED as to Bevett's

Count I claim for discriminatory non-selection.[8]  See Fed. R.

Civ. P. 56 ("The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law.").[9]

## B.  Retaliation

The Beavers Order also sets forth the applicable law

for Title VII retaliation claims, see 2014 WL 2932479, at *9-10,

and the Court incorporates that discussion here.  To establish a

prima facie case for retaliation, a plaintiff must show that:

---

[7] In fact, in December 2011, ASAP restarted the process to
fill the a similar supervisory counseling psychologist position,
and it selected Bevett.  Bevett accepted the position on March
19, 2012, and was appointed on April 8, 2012.  [Def.'s Bevett
CSOF at ¶ 7 (citing Decl. of Pamela Jinnohara at ¶ 6).]

[8] Even assuming, arguendo, that the Court had not struck
Bevett's documents, the Court would still find that nothing in
the record supports Bevett's claim that the hiring process was
discriminatory.

[9] The Court also rejects Bevett's claim that the EEO Office
"would not accept for investigation" his complaints.  [Complaint
at ¶ 44.]  In fact, it did investigate the claims.  Defendant
offered evidence that the EEO office rejected two of his claims
as untimely, [Perry Bevett Decl., Exhs. 2, 3 (9/7/11 notices of
dismissal of EEO complaints),] and that it did accept the third
[id., Exh. 1 (8/17/11 notice of acceptance of EEO complaint)].
Further, this claim is not covered by Title VII.  "Title VII
'does not create an independent cause of action for the
mishandling of an employee's discrimination complaints.'"  Hill
v. England, No. CVF05869RECTAG, 2005 WL 3031136, at *2 (E.D. Cal.
Nov. 8, 2005) (some citations omitted) (quoting Nelson v.
Greenspan, 163 F. Supp. 2d 12, 18 (D.D.C. 2001)).

8

(1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the employment action. Dawson, 630 F.3d at 936. There is no genuine dispute that Bevett can prove any of the three necessary elements of his retaliation claim.

First, Bevett does not provide any evidence that he engaged in an activity protected by Title VII. "Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to 'oppose[ ]' an employer's discriminatory practices." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003) (quoting 42 U.S.C. § 2000(e)-3(a)). The Court's conclusion would be the same, even if it were to consider Bevett's improperly offered circumstantial evidence. At best, Bevett presents evidence that:

- the chief of psychology of Walter Reed Army Medical Center, Francis Joseph Fishburne, Jr., who worked over Bevett when he was an intern in the late 1970s, may have thought Bevett was "difficult" and "hard to work with"; [Bothwell Bevett Decl., Exh. 2 (Trans. of 2/21/14 Depo. of William Weitz) at 100-01;]

- Bevett had interpersonal and professional conflicts with his supervisor, Major William Weitz ("Maj. Weitz"), in the 1980s, and that, at that time, Maj. Weitz may have made false statements about Bevett in an attempt to discredit him, and purportedly threatened to destroy his career; [id., Exhs. 6 (Trans. of 2/27/14 Depo. of Frank L. Giordano ("Giordano Depo.")) at 9 (admitting that Bevett told him

9

that Maj. Weitz "threatened to destroy his career"), 7
(10/23/86 ltr. from LTC Samuel M. Hinton on behalf of
Bevett) (stating that Maj. Weitz was "untruthful" to the
credentialing hearing committee);]

•Maj. Weitz may have fostered a hostile work environment for
Bevett at Tripler in the early 1980s; [Giordano Depo. at 33-
34;]

•in 2006 and 2007, the Army may have also passed over Bevett for
some positions he sought; [Bothwell Bevett Decl., Exh. 11
(12/19/06 ltr. to the Army Customer Focus Division Chief);]
and

•Bevett has many qualifications and has received recommendations
and commendations throughout his career [id., Exhs. 1
(Bevett CV), 3 (11/15/90 ltr. of supp. from Col. Ernest J.
Lenz), 12 (5/18/05 ltr. of reference), 13 (5/16/05 ltr. of
recommendation), 17 (1/10/80 recommendation), 18 (10/20/87
character reference), 19 (undated commendation medal
announcement, possibly from 1989 or 1990)].

Even in the light most favorable to Bevett, Bevett does not raise

a genuine issue of material fact that he engaged in protected

activity.  See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir.

2013) (at summary judgment, the court "must determine, viewing

the facts in the light most favorable to the nonmoving party,

whether there are any genuine issues of material fact and whether

the district court correctly applied the relevant substantive

law" (citation and quotation marks omitted)).

        Second, as described above, there is no evidence that

he was actually rejected for the position, and thus no evidence

of an adverse employment action.  See supra Discussion Section

I.A.

Third, even if his non-selection for the three psychologist positions could be considered adverse employment actions, and the Court considered the Bevett Exhibits, there is no link between Maj. Weitz's alleged vendetta in the 1980's and Bevett's non-selections in 2011. "'The causal link may be established by an inference derived from circumstantial evidence, such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'" Tungjunyatham v. Johanns, 500 F. App'x 686, 688 (9th Cir. 2012) (quoting Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988)).

Any protected activity and the non-selections are too attenuated. Bevett's sole alleged link is that Bevett had a disagreement with Dr. Raymond Folen in the early 1980's, and Dr. Folen – now the chief of the department of psychology at Tripler – may have had input into the hiring process in 2011. [Mem. in Opp. at 2; Bevett Interrog. Resps. at 2-3.]

There is no evidence that the dispute in the 1980's focused on protected activity and, even if there was, it is entirely too remote in time to form a link under Title VII. Further, Bevett's own evidence from his interrogatory responses is equivocal. See Bevett Interrog. Resps. at 2-3 ("I believe that Dr. Folen has something to do with my not being

11

selected . . . .").  Last, Dr. Folen denied that he had any
direct involvement in the hiring process at Tripler in 2011, and
stated that he was only "aware of one job" that Bevett applied
for.  [Bothwell Bevett Decl., Exh. 2 (Trans. of 3/1/13 Depo. of
Raymond Folen) at 11-17.)]  Dr. Folen offered Bevett that
position, and Bevett turned it down.  [Id.]  Thus, there is no
evidence of a link between incidents in the 1980's and Bevett's
non-selections in 2011.

Taken together, there is no dispute as to whether
Bevett can make a prima facie for retaliation, and the Court
GRANTS summary judgment on Bevett's Count II.

### C. **Summary**

Since there is no dispute as to whether Bevett can make
a prima facie case of discriminatory non-selection or
retaliation, the Court GRANTS the Bevett Motion in its entirety.

## II. **Dickey Motion**

Dickey alleges, in essence, that he was subject to a
hostile work environment from 1995 up until he was constructively
discharged in December 2010.  During that time he suffered
discrimination and retaliation, and he attempted to raise these
issues when he contacted the EEO office in January 2011.

### A. **Exhaustion**

Defendant argues that Dickey failed to make contact
with an EEO counselor within forty-five days of the allegedly

12

discriminatory events.  As discussed in the Beavers Order, and incorporated here, Title VII requires contact with an EEO counselor within forty-five days of the alleged discrimination, and failure to make that contact can be dispositive.  <u>See</u> 2014 WL 2932479, at *2 (citing 29 C.F.R. § 1614.105(a)(1) and quoting <u>Marugame v. Napolitano</u>, Civil No. 11-00710 LEK-BMK, 2013 WL 4608079, at *9 (D. Hawai'i Aug. 28, 2013)).

Defendant presents evidence that Dickey did not contact the EEO Office until March 3, 2011.  Dickey retired, effective December 31, 2010.  [Def.'s Concise Statement of Material Fact Regarding Claims of Charles Dickey, filed 4/11/14 (dkt. no. 68) ("Def.'s Dickey CSOF"), at ¶ 2.[10]]  Thus, March 3, 2011 is beyond forty-five days from the latest possible instance of discrimination.  <u>See e.g.</u>, <u>id.</u>, Decl. of Annette Perry ("Perry Dickey Decl."), Exh. 15 (Notice of Dismissal of Dickey's EEO Complaint ("Dickey EEO Decision")) at 2 (dismissing EEO complaint as untimely).

Defendant's evidence supports March 3, 2011 as the date of first contact.  It shows that: (1) on March 3, 2011, Dickey hand delivered a "Letter of Discrimination Against Cardiology Dept. Tripler Army Medical Center"; [Def.'s Dickey CSOF at ¶ 3 (citing Perry Dickey Decl., Exh. 4 ("Dickey Discrimination

---

[10] Since Dickey did not oppose Defendant's Dickey CSOF, <u>see</u> Strike Order, the facts in Defendant's Dickey CSOF are deemed admitted.  <u>See</u> <i>supra</i> n.6.

Letter")));] (2) on March 7, 2011, an EEO counselor left a voicemail for Dickey, and Dickey returned the call the following day and stated that his attorney told him to write the letter and that he did not request an EEO counseling appointment; [id. at ¶¶ 4-5 (citing Perry Dickey Decl., Exhs. 6 (3/7/11 file note), 7 (3/8/11 file note);] (3) on March 8, 2011, the EEO Office sent Dickey a letter outlining the EEO process, and on April 5, 2011, the EEO office received Dickey's signed acknowledgment of receipt and, upon the EEO Office's inquiry, Dickey again stated he did not request an appointment; [id. at ¶¶ 5-6 (citing Perry Dickey Decl., Exhs. 8 (3/8/11 EEO ltr. to Dickey), 9 (Dickey's signed acknowledgment, received 4/5/11), 10 (4/5/11 file note), 11 (transmittal slip noting "[n]o EEO appointment requested");] and (4) on May 25, 2011, Dickey called the EEO office and requested an intake appointment [id. at ¶ 7 (citing Perry Dickey Decl., Exh. 13 (5/25/11 emails between EEO office and Bothwell)[11]].

There is no evidence that Dickey attempted to make contact earlier than March 3, 2011, or that he raised that issue in the numerous communications he had with the EEO office.  Rather, Defendant's evidence shows that Dickey did not attempt to meet with a counselor until May 25, 2011.

---

[11] In one of the May 25, 2011 emails, the EEO Complaints Manager writes that "on multiple occasions, [Dickey] declined to pursue any complaint through our office . . . ."  [Def.'s Dickey CSOF, Perry Dickey Decl., Exh. 13 at 2.]

14

Even if the Court were to consider Dickey's evidence, the only support in the record is Dickey's own statements that he attempted to make contact in late January 2011. The first time he raised this contact was on August 1, 2011 in his formal EEO complaint, more than seven months after it purportedly occurred. [Perry Dickey Decl., Exh. 14 ("Dickey EEO Complaint").] At that time, the EEO office rejected the argument. [Dickey EEO Decision at 2.] He did not raise the January contact in his interrogatory responses, [Perry Dickey Decl., Exh. 1 (Charles ("C.W.") Dickey's Response to Interrogatories (First Set)) at 3-4,] but argued it – citing the Dickey Declaration – in his memorandum in opposition. [Mem. in Opp. at 1-2, 12.] In that memorandum, Dickey also cites to a Complaint Data Form from March 13, 2011, which is later than the March 5, 2011 date. [Bothwell Dickey Decl., Exh. 1.] Since Dickey presents no evidence that he made contact with an EEO counselor any earlier than March 2011, the Court finds that there is no genuine issue of material fact as to whether Dickey contacted an EEO counselor within forty-five days of his retirement date of December 31, 2010.[12]

_____

[12] The Court also finds that, even if he did attempt to contact an EEO counselor in January 2011, Dickey did not exhaust claims for discrete acts of discrimination. There is no evidence that he complained of any discrete acts that occurred within the prior forty-five days in either the Discrimination Letter or the Dickey EEO Complaint. The only discrete acts were undated and many of the incidents involved LTC Dove who transferred in 2004, and could not have occurred in any forty-five day window.

(continued...)

The Court therefore GRANTS the Dickey Motion in its entirety for failure to exhaust administrative remedies.  <u>See</u> Fed. R. Civ. P. 56.[13]

B.    **Substantive Title VII Claims**

Even though the Court grants the Dickey Motion on the basis of exhaustion, it considers here the substance of Dickey's claims for completeness.

1.    **Hostile Work Environment and Constructive Discharge**

Since Dickey did not exhaust any claims for discrete acts of discrimination (even if he had made contact with a counselor in January 2011), <u>see</u> <i>supra</i> n.12**,** his discrimination claim turns on whether he experienced a hostile work environment.

_____

[12](...continued)
Therefore, even if he had exhausted his hostile work environment and constructive discharge claims, Dickey did not exhaust any claims for discrete acts of discrimination.  <u>See</u> <u>Josephs v. Pac. Bell</u>, 443 F.3d 1050, 1062 (9th Cir. 2006) (court review extends "over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination").

[13] Though not expressly made in his memorandum of opposition, the Court rejects any argument that the exhaustion requirement should be equitably tolled.  Although courts recognize equitable tolling as a defense to the EEOC exhaustion requirements, <u>see</u> <u>Leong v. Potter</u>, 347 F.3d 1117, 1123 (9th Cir. 2003), that defense does not apply where, as here, the claimant was represented by counsel during the contact window, <u>see</u> Dickey Discrimination Letter; <u>Coppinger-Martin v. Solis</u>, 627 F.3d 745, 750 (9th Cir. 2010), or the claimant knew of the "existence of a possible claim within the limitations period," <u>Johnson v. Henderson</u>, 314 F.3d 409, 414 (9th Cir. 2002) (citation and internal quotation marks omitted).

The Beavers Order describes the standard for proving a hostile work environment, see 2014 WL 2932479 at *6, and the Court incorporates that discussion. Basically, "'[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.'" Dominguez-Curry, 424 F.3d at 1034 (alteration in Dominguez-Curry) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

"To establish a prima facie case for a hostile-work environment claim, [a plaintiff] must raise a triable issue of fact as to whether (1) the defendants subjected her to verbal or physical conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008). If using circumstantial evidence, it must be "specific and substantial to defeat the employer's motion for summary judgment." E.E.O.C. v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009) (citation and internal quotation marks omitted). The Ninth Circuit has rejected claims based on conclusory statements. For example:

> [The plaintiff] asserts that several of these incidents occurred in "late 1998" or 1999.

17

> However, he offers no support for these asserted
> dates other than his declaration.  Indeed, he
> offers no specific dates for any of the actions.
> [The plaintiff's] conclusory allegations,
> unsupported by facts, are insufficient to survive
> a motion for summary judgment.  [The defendant]
> therefore is entitled to summary judgment on [the
> plaintiff's] failure to promote claims.

Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir.

2003) (citation omitted).  Similarly, "[a] conclusory,

self-serving affidavit, lacking detailed facts and any supporting

evidence, is insufficient to create a genuine issue of material

fact."  Nilsson v. City of Mesa, 503 F.3d 947, 952 (9th Cir.

2007) (alteration in Nilsson) (citation and internal quotation

marks omitted).

    The evidence in the record is insufficient to raise a

genuine dispute as to whether Tripler employees' actions were

race-based or that they were severe and pervasive.  The

Discrimination Letter, Dickey's Interrogatory Responses, and the

Dickey EEO Complaint consist almost entirely of conclusory

statements regarding workplace disputes, most of which were not

directed at Dickey, and bare statements that the conflicts arose

from race.  See, e.g., EEO Complaint at 1 ("Continuous, daily,

racially hostile work environment 1996 through 2010. . . .  Dr.

Michael Illovsky . . . along with Capt. Siaki, the head nurse,

demeaned and harassed African American and Filipino American

employees. . . ."); Dickey Interrog. Resps. at 2 ("Dr. Thomas

Wisenbaugh continued the harassment for example by yelling at me

one morning for no reason, and generally being rude."). These types of "facts" do not meet the burden to make a prima facie case. See Hernandez, 343 F.3d at 1116; Surrell, 518 F.3d at 1108.

Even considering Dickey's improperly submitted evidence, and viewing it in the light most favorable to him, the cumulative evidence, at best, shows:

• LTC Dove belittled Dickey and once slammed a door in Dickey's face; [Dickey Decl. at ¶ 7;]

• Dr. Wisenbaugh shunned Dickey, screamed at him, singled him out for chores even though he knew Dickey was disabled, and refused Dickey medical attention at Tripler; [id. at ¶¶ 8-9;]

• Dr. Michael Illovsky evaluated Dickey as successful at his job, but generally talked down to African Americans at Tripler; [id. at ¶ 10; Bothwell Dickey Decl., Exhs. 2 (Trans. of 2/20/14 Depo. of Michael Illovsky) at 52-53 (Dickey did a "good job," and he "got the work we requested completed"), 3 (2010 evaluation);]

• Dickey witnessed disparate treatment between whites and non-whites in terms of "customary treatment," encouragement, incentive pay, and promotion; [Dickey Decl. at ¶¶ 11-12;]

• Dickey was ignored when he complained against "bigoted" coworkers, and was not approved for additional courses and training, and when he was permitted to attend those trainings he was forced to pay his own way; [id. at ¶¶ 13-15;]

• Dickey believed other coworkers shunned and harassed him for being black, and supervisors did nothing when he made complaints; [id. at ¶¶ 16-19;]

• Dickey was distressed by racist treatment of himself and others; [id. at ¶¶ 20-22;] and

• as a result of the discrimination, Dickey's heart condition worsened and he suffered shortness of breath, dizziness and

other symptoms [Bothwell Dickey Decl., Exhs 4-7].
The vast majority of his support comes from the Dickey
Declaration, and it consists of conclusory allegations.  This is
not the type of evidence required to defeat summary judgment.
See Hernandez, 343 F.3d at 1116; Nilsson, 503 F.3d at 952.  It
appears that Dickey felt mistreated at Tripler and that he felt
his supervisors and co-workers were rude, cold and unwelcoming.
This is unfortunate.  Dickey was understandably distressed by
such an unpleasant and unhealthy work environment.  The law,
however, requires objective evidence of severe and pervasive
discrimination and such evidence has not been presented.  See
Harris, 510 U.S. at 21.  Thus, Dickey's failure to raise a
genuine issue of material fact as to a hostile work environment
is sufficient ground to grant the Dickey Motion as to his
Count I discrimination claim.

     Also in Count I, Dickey claims that he was
constructively discharged.  "A hostile-environment constructive
discharge claim entails something more [than simple
discrimination]: A plaintiff who advances such a compound claim
must show working conditions so intolerable that a reasonable
person would have felt compelled to resign."  Pa. State Police v.
Suders, 542 U.S. 129, 147 (2004) (citations omitted).  Since
Dickey cannot make a prima facie case for a hostile work
environment, it follows that he cannot meet the even more

stringent standard for constructive discharge.  For this reason,
even if Dickey had timely made contact with an EEO counselor,
summary judgment for Defendant would be warranted.

### 2. **Retaliation**

Like Bevett, Dickey does not provide evidence to raise
a genuine issue as to any of the three necessary elements of
retaliation.  First, he does not provide any evidence that he
engaged in any activity protected by Title VII.  He writes that
he "spoke up" for colleagues Richard Pacheco and Marceau Doze-
Guillory, [Dickey EEO Complaint at 1,] and that he "complained by
[sic] the EEO Office and Sen. Daniel Inouye's office about [LTC]
Dove" and complained to his supervisors [Dickey Interrog. Resps.
at 3-4].  However, Dickey does not provide any facts related to
his alleged complaints that show that any of these acts were
protected activity under Title VII.  <u>See</u> <u>Raad</u>, 323 F.3d at 1197.

Second, Dickey does not point to any adverse employment
actions in the Complaint, the Dickey EEO Complaint, the Dickey
Declaration, or his memorandum in opposition to the Dickey
Motion.  The only mentions of allegedly retaliatory actions are
conclusory statements that the hostile work environment
"intensified" after he "spoke up."  [Dickey EEO Complaint at 1;
Complaint at ¶ 48.]    As with his statements about the hostile
work environment, Dickey's discussion of the allegedly protected
activities are equally conclusory.  Finally, for the same

reasons, Dickey fails to provide evidence to support the third element of retaliation: a causal link.

Even if Dickey had exhausted his retaliation claim, there is no dispute as to whether Dickey could make a prima facie case for retaliation, and summary judgment on Count II would be warranted.

**C.    Summary**

The Court FINDS that there is no genuine issue of material fact that Dickey has not exhausted his administrative remedies under Title VII and therefore GRANTS the Motion.  Even if he had exhausted his administrative remedies, Dickey was not discriminated against or retaliated against by Defendant within the meaning of Title VII.  The Court reaches this conclusion because Dickey has failed to rebut Defendant's Dickey CSOF or assert his own undisputed facts.  Even if the Court considered all of the evidence that Dickey improperly included, Dickey has failed to raise any genuine issue of material fact as to a hostile work environment, constructive discharge, or retaliation, and thus summary judgment is warranted.

**CONCLUSION**

On the basis of the foregoing, Defendant's Motion for Dismissal or Summary Judgment on the Claims of Plaintiff David Bevett, filed April 23, 2014, and Defendant's Motion for Dismissal and Summary Judgment on the Claims of Plaintiff

Charles Dickey, filed April 11, 2014, are HEREBY GRANTED in their entirety. The Court directs the Clerk's Office to terminate Dickey and Bevett as parties.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 31, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**KELVIN BANKS, ET AL. VS. JOHN MCHUGH, ETC., ET AL; CIVIL 11-00798 LEK-KSC; ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF CHARLES DICKEY; AND GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT ON THE CLAIMS OF DAVID BEVETT**