IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KELVIN BANKS, ALISON BEAVERS, )  CIVIL NO. 11-00798 LEK-KSC
DAVID "FLYING WITH EAGLES"    )
BEVETT, CHARLES W. DICKEY,     )
MARCEAU DOZE-GUILLORY, EDWARD )
MANIGAULT, TAMANEE MUNDY,       )
WANDA THOMAS, SYLVIA VEGA,     )
and CHINY WANG,                 )
                                )
          Plaintiffs,           )
                                )
     vs.                        )
                                )
JOHN McHUGH, SECRETARY          )
DEPARTMENT OF THE ARMY;         )
LEON E. PANETTA, SECRETARY,     )
DEPARTMENT OF DEFENSE,          )
                                )
          Defendants.           )
_____ )


**ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND
SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF MARCEAU DOZE-
GUILLORY; AND GRANTING DEFENDANT'S MOTION FOR DISMISSAL
AND SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF KELVIN BANKS**

          Before the Court are: Defendant Secretary, Department

of the Army, John M. McHugh's ("Defendant") Motion for Dismissal

and Summary Judgment on the Claims of Plaintiff Marceau Doze-

Guillory, filed on May 6, 2014 ("Doze Motion"); and Defendant's

Motion for Dismissal and Summary Judgment on the Claims of

Plaintiff Kelvin Banks, filed on May 9, 2014 ("Banks Motion,"

collectively "Motions"). [Dkt. nos. 73, 79.] Plaintiff

Marceau Doze-Guillory ("Doze")[1] filed her memorandum in

_____

          [1] In her Memorandum in Opposition, Marceau Doze-Guillory
                                        (continued...)

opposition on June 26, 2014, and Plaintiff Kelvin Banks ("Banks")
filed his memorandum in opposition on June 26, 2014 as well.
[Dkt. nos. 105, 107.]  Defendant filed his reply in support of
the Banks Motion on July 3, 2014 and his reply in support of the
Doze Motion on July 7, 2014.  [Dkt. nos. 114-15.]  The Court
finds these matters suitable for disposition without a hearing
pursuant to Rule LR7.2(d) of the Local Rules of Practice of the
United States District Court for the District of Hawai`i ("Local
Rules").  After careful consideration of the Motions, supporting
and opposing memoranda, and the relevant legal authority,
Defendant's Motions are HEREBY GRANTED for the reasons set forth
below.

<u>BACKGROUND</u>

The procedural facts of this case were set forth in
this Court's June 30, 2014 Order Granting Defendant's Motion for
Dismissal or Summary Judgment on Plaintiff Alison Beavers' Claims
("Beavers Order").  [Dkt. no. 112.]  The original plaintiffs
filed their complaint on December 30, 2011 ("Complaint").[2]

---

[1](...continued)
refers to herself as Marceau Doze or Doze.

[2] One case, that of Wanda Thomas, was severed from the
original case.  <u>See</u> 9/28/12 Order Granting in Part and Denying in
Part Defendants' Motion to Dismiss and Sever Plaintiffs' Claims
("9/28/12 Order"), *available at* 2012 WL 4715162.  The Court
granted summary judgment and dismissal for Defendant on Thomas's
case and Beavers's claims, and on Plaintiffs David Bevett's and
Charles Dickey's claims by orders dated June 30, 2014, and July
(continued...)

Doze, who is African American, was a civilian cardiac nurse in the cardiology department of Tripler Army Medical Center ("Tripler") from January 2010 until August 2011, under the supervision of Captain Thelma Nicholls ("Capt. Nicholls"), also African American.  She claims that: two of her co-workers, Mary Burt ("Burt") and Cynthia Chung ("Chung"), called her a "beast"; Capt. Nicholls treated her rudely, withheld training opportunities, and issued her a performance evaluation that was satisfactory except in the area of teamwork, where she was downgraded one point; and she was constructively discharged. [Complaint at ¶¶ 56-66.]

Banks, who is also African American, worked as a civilian emergency medical technician in the Tripler emergency department under the supervision of Captain Kenneth Kelly ("Capt. Kelly"), Major William Meek ("Maj. Meek"), Sergeant First Class Cory Montague ("SFC Montague"), and Sergeant First Class

    [2](...continued)
31, 2014.  Those orders are available at 2014 WL 2968689 (Order Granting Defendant's Motion for Summary Judgment ("Thomas Order")), 2014 WL 2932479 (Beavers Order), and 2014 WL 3778319 (Order Granting Defendant's Motion for Dismissal and Summary Judgment on the Claims of Plaintiff Charles Dickey; and Granting Defendant's Motion for Dismissal and Summary Judgment on the Claims of David Bevett ("Dickey/Bevett Order")), respectively. The Court dismissed the claims of Plaintiff Edward Manigault in the 9/28/12 Order, and the parties stipulated to the dismissal of the claims of Plaintiff Sylvia Vega on April 7, 2014.  [Dkt. no. 66.]

Kimberly McCaughtry ("SFC McCaughtry"), who are all Caucasian.[3] Banks claims that: he was racially harassed on a daily basis; his supervisors made derogatory remarks about African Americans during departmental supervisor meetings; he was charged with absence without leave ("AWOL") or leave without pay ("LWOP") when he requested sick leave; on May 31, 2008, he received an unjustified notice of proposed suspension; and in September of 2008, emergency room care was unreasonably delayed to him.  [Id. at ¶¶ 28-33.]

Doze and Banks allege the following claims: discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-1, *et seq.* ("Count I"); and retaliation in violation of Title VII ("Count II").[4]  They seek the following relief: compensatory damages; removal of derogatory material from their personnel files; disciplinary measures against the officers, managers, and supervisors named in the Complaint; attorneys' fees; and all other appropriate relief.  [Id. at pgs. 19-20.]

In the instant Motions, Defendant seeks dismissal and summary judgment on all claims by Doze and Banks in the

---

[3] SFC Montague identifies as Caucasian/Hispanic.

[4] The Court dismissed their third claim, for discrimination and retaliation in violation of the Equal Protection Clause of the Fifth Amendment ("Count III"), in the 9/28/12 Order, reasoning that it was preempted by Title VII.  2012 WL 4715162, at *6.

Complaint.

**DISCUSSION**

I.  **Doze Motion**

Doze alleges, in essence, that she was subjected to a hostile work environment, which was enabled by her supervisor, Capt. Nichols, who gave her an unsatisfactory rating; the racist environment caused her constructive discharge.  [Complaint at ¶¶ 56-66.]

The Beavers Order sets forth the applicable framework for Title VII claims, as well as the burdens of proof and standards for proving discrimination and retaliation.  See 2014 WL 2932479, at *5-6, *8-10.  According to these standards, which are incorporated here, as well as the law set forth below, Doze has made no showing that she can establish a prima facie case of discrimination or retaliation.  See, e.g., Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (describing plaintiff's burden in discrimination case); Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011) (burden in retaliation case).

A.  **Evaluation Downgrade**

A plaintiff may prove discrimination through either discrete discriminatory acts or by showing an overall hostile work environment.  Examples of discrete acts are termination, failure to promote, denial of transfer, or refusal to hire.

5

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).

To establish a prima facie case of discrimination, a plaintiff

must show that: "(1) she belongs to a protected class; (2) she

was qualified for her position; (3) she was subject to an adverse

employment action; and (4) similarly situated individuals outside

her protected class were treated more favorably." Davis v. Team

Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). An adverse

employment action is an action that "produce[s] a material change

in the terms and conditions of [a worker's] employment[.]" Kob

v. Cnty. of Marin, 425 F. App'x 634, 636 (9th Cir. 2011) (citing

Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115,

1125-26 (9th Cir. 2000)).

The only discrete act that Doze alleges is "a

performance evaluation that was satisfactory except in the area

of 'teamwork.'"[5]  [Complaint at ¶ 64.]  In that evaluation, Doze

---

[5] Doze also alleges that Capt. Nicholls denied her "training opportunities that were afforded to non-minority coworkers." [Complaint at ¶ 62.]  However, she does not specify what the trainings were for, when they occurred, or who was permitted to attend.  Further, she did not raise this issue in either her formal complaint to the Equal Employment Opportunity ("EEO") office or her responses to interrogatories.  [Def.'s Concise Statement of Material Fact Regarding Claims of Marceau Doze-Guillory, filed 5/6/14 (dkt. no. 74) ("Def.'s Doze CSOF"), Decl. of Annette Perry ("Perry Doze Decl."), Exhs. 1 (Formal Complaint of Discrimination, dated March 24, 2011 ("Doze EEO Complaint)), 16 (Marceau Doze-Guillory's Response to Interrogatories (First Set) ("Doze Interrog. Resps.")) at Resp. 6, pgs. 6-12).]  Thus, the Court rejects this claim.

received scores of three[6] in the three objectives that made up ninety percent of the evaluation by weight, and a single point off on the Teamwork objective. [Perry Doze Decl., Exh. 20 at 2; Bothwell Doze Decl., Exh. 8 at 1.] While Doze is understandably upset about being downgraded, a downgrade of a single point, is not considered an adverse employment action under the law. <u>See</u>, <u>e.g.</u>, <u>Kob</u>, 425 F. App'x at 636 (rejecting argument that "a performance rating that was, on balance, positive or neutral" was an adverse employment action); <u>Kortan v. Cal. Youth Auth.</u>, 217 F.3d 1104, 1113 (9th Cir. 2000) (rejecting Title VII claim and explaining that plaintiff "has not shown that her evaluation was discriminatory or retaliatory, or was such an 'intolerable' act that it would force an employee to quit" (citation omitted)).

Further, although Doze argues that the explanation for the downgrade was pretextual, [Doze Mem. in Opp. at 11,] she provides no evidence to support this claim or rebut Capt.

---

[6] It is not entirely clear from the versions of the evaluation that Doze and Defendant offer what exactly a score of three represents. [Perry Doze Decl., Exh. 20 (12/20/10 Mem. of Record, including version of evaluation); Plaintiff's Concise Statement of Facts Opposing Defendant's Motion for Summary Judgment on Claims of Marceau Doze-Guillory, filed 6/26/14 (dkt. no. 107-1) ("Doze CSOF"), Decl. of Anthony P.X. Bothwell Opposing Defendant's Motion for Summary Judgment on the Claims of Marceau Doze-Guillory ("Bothwell Doze Decl."), Exh. 8 (excerpts of Performance Rating and Compensation Summary).] However, from their CSOFs, it appears that three is a satisfactory rating. [Def.'s Doze CSOF at ¶ 8 ("'satisfactory' in all areas except the 'Teamwork' Contributing Factor"); Doze CSOF at ¶ 8 (not disputing description of the ratings).]

Nicholls's credible contemporaneous reasoning for the evaluation. [Bothwell Doze Decl., Exh. 8 at 2.] Even viewing the evidence in the light most favorable to Doze, the Court finds that Doze has failed to raise a genuine issue of material fact as to discrete acts of discrimination against her. See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) (at summary judgment, the court "must determine, viewing the facts in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law" (citation and quotation marks omitted)). Thus, the Court GRANTS the Doze Motion on this claim. See Fed. R. Civ. P. 56 ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

**B.    Hostile Work Environment and Constructive Discharge**

The Ninth Circuit has held that, "'[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.'" Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1034 (9th Cir. 2005) (alteration in Dominguez-Curry) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

"To establish a prima facie case for a hostile-work environment claim, [a plaintiff] must raise a triable issue of fact as to whether (1) the defendants subjected her to verbal or physical conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008) (alteration omitted). If using circumstantial evidence, it must be "specific and substantial to defeat the employer's motion for summary judgment." E.E.O.C. v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009) (citation and internal quotation marks omitted). The Ninth Circuit has rejected claims based on conclusory statements. For example:

> [The plaintiff] asserts that several of these incidents occurred in "late 1998" or 1999. However, he offers no support for these asserted dates other than his declaration. Indeed, he offers no specific dates for any of the actions. [The plaintiff's] conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment. [The defendant] therefore is entitled to summary judgment on [the plaintiff's] failure to promote claims.

Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir. 2003) (citation omitted). Similarly, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." Nilsson v. City of Mesa, 503 F.3d 947, 952 (9th Cir. 2007) (alteration in Nilsson) (citation and internal quotation

9

marks omitted).

Doze's evidence is insufficient to raise a genuine
dispute as to whether the actions of her colleagues and
supervisor were race-based or that they were severe and
pervasive. Doze's hostile work environment claim largely focuses
on ongoing conflict with colleague Burt, who worked closely with
Doze in the Treadmill Room, and Capt. Nicholls's attempts to
resolve the conflict. [Doze Mem. in Opp. at 1-3, 11-12.]
Although it is apparent that Doze and Burt did not get along,
there is no evidence that the conflict had anything to do with
race. Instead the evidence shows that it was based on
performance and personality. [Perry Doze Decl., Exhs. 7 (Trans.
of 10/26/11 Fact-Finding Conference ("FFC"), excerpts of Capt.
Nicholls testimony ("Def.'s Nicholls FFC Trans.")) at 21-22
(conflict over failure of Burt to train Doze), 23-24 (conflict
over job responsibilities), 43-44 (conflict over doing job too
slowly); Doze Interrog. Resps. at Resp. 2, pg. 2 ("I was
repeatedly taunted and subjected to defaming remarks about my
ability to do my job.").]

Other evidence shows that Burt had a history of
conflict with Doze's predecessors, and there is no evidence that
these other conflicts were race-based. [Doze Interrog. Resps. at
Resps. 2, pg. 2 ("management was not only aware of [Burt's]
behavior but that it was accepted within the department long

10

ago"), 6, pg. 7 ("Captain Rosario informed me that others had encountered similar problems . . . .), pg. 8, 10 ("During the course of the meeting I learned that there had been a total of five nurses in my position within 2 years. . . . [Burt] has had a problem with every nurse that has worked in the treadmill room giving them all a hard time.").]

Rather than rejecting Doze's complaints about Burt, Capt. Nicholls attempted to resolve the conflict multiple times. [Perry Doze Decl., Exhs. 12 (6/13/10 Mem. for Record by Nicholls discussing incidents and including "Proposed Solution"), 13 (5/10/10 emails between Nicholls and Doze addressing conflict), 15 (8/20/10 email from Nicholls to Doze and Burt reiterating discussions between the three and stating expectations about job roles in Treadmill Room).]

Similarly, the evidence shows that the disputes with Dr. Jone Geimer-Flanders ("Dr. Geimer-Flanders") center on how Doze conducted EKGs, not her race. [Perry Doze Decl., Exhs. 11 (Trans. of FFC, excerpts of Dr. Giemer-Flanders testimony ("Def.'s Giemer-Flanders FFC Trans.")) at 85-86 ("but she was wrong enough of the time that I was concerned about it"), 18 (9/16/10 email from Geimer-Flanders to Nicholls regarding "ongoing concerns" with Doze's EKGs), 19 (11/15/10 Mem. for Record by Capt. Nicholls ("11/15/10 Mem.")) ("I received an email from Dr. Geimer-Flanders which outlined concerns she had about

[Doze's] performance in the Treadmill Room.").]

Again, the evidence shows that Capt. Nicholls investigated the complaint and attempted to resolve it. [11/15/10 Mem. ("To determine if this was an isolated incident, I verified with other providers if they were having concerns about [Doze's] performance, specifically interpreting test results. . . . It was decided between [Doze] and me, that I would locate specific cardiology review courses for the Treadmill staff to attend.").]

While it appears that Doze is unhappy with the outcome of Capt. Nicholls's attempts to resolve the various work-related conflicts, there is no evidence of a racially hostile work environment. See Surrell, 518 F.3d at 1108 (requiring the plaintiff to show that "the defendants subjected her to verbal or physical conduct based on her race"). Doze argues that Burt and Chung called her a "beast," and Burt said she was "lazy," which she contends are racially-charged terms. [Bothwell Doze Decl., Exhs. 1 (6/16/10 Doze Mem. for Record) (describing Burt "beast" incident), 2 (8/20/10 Doze Mem. of Record) (describing Chung incident); Doze CSOF, Decl. of Doze ("Doze Decl.") at ¶¶ 3 ("lazy"), 6 ("beast"), 7 (regarding racial epithets).] The terms do not appear racial on their face and, in the context of ongoing volatile workplace conflicts centering on whether Doze was properly doing her share of the work, the Court finds that the

terms were not used in a racial manner.  Even if they were, these isolated events are not "sufficiently severe or pervasive to alter the conditions of [Doze's] employment and create an abusive working environment."  See Surrell, 518 F.3d at 1108.

Nor does the Court find that Doze's purported evidence is sufficiently "specific and substantial to defeat [Defendant's] motion for summary judgment."  See Boeing, 577 F.3d at 1049 (citation and internal quotation marks omitted).  In addition to the "beast" incidents, Doze claims:

• Dr. Geimer-Flanders lied to Capt. Nicholls about Doze, insulted her in front of patients, and failed to train her; [Doze Decl. at ¶¶ 9-12;]

• Capt. Nicholls lied about Doze to superiors, put false and secret accusations into Doze's file, and ridiculed her in front of others; [id. at ¶¶ 5, 7, 13, 15-16, 18-20;]

• in one incident, in January 2011, Capt. Nicholls grew so hostile at a meeting with Doze that a superior asked Capt. Nicholls to leave the room; [id. at ¶ 17;] and

• Doze did everything she "possibly could to foster teamwork" and was competent at her job [id. at ¶¶ 4, 14].

The support for these statements comes from the Doze Declaration, and it consists of conclusory allegations.  This is not the type of evidence required to defeat summary judgment. See Nilsson, 503 F.3d at 952; Hernandez, 343 F.3d at 1116.  It appears that Doze felt mistreated at Tripler and that Capt. Nicholls did not meet her needs in resolving conflicts with coworkers.  It is unfortunate that the working conditions were less than ideal for her at Tripler.  The law, however, requires

13

objective evidence of severe and pervasive discrimination, and Doze has not presented such evidence.  See Harris, 510 U.S. at 21.  Doze fails to raise a genuine issue of material fact as to a hostile work environment, and thus the Court GRANTS the Doze Motion as to this claim.

Also in Count I, Doze claims that she was constructively discharged.[7]  "A hostile-environment constructive discharge claim entails something more [than simple discrimination]: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign."  Pa. State Police v. Suders, 542 U.S. 129, 147 (2004) (citations omitted).  Since Doze does not make a prima facie case for a hostile work environment or discrete acts of discrimination, it follows that she cannot meet the even more stringent standard for constructive discharge. The Court therefore GRANTS the Doze Motion as to this claim as well.

_____

[7] The Court rejects Defendant's argument that Doze failed to exhaust her administrative remedies as to the constructive discharge claim because, viewing the evidence in the light most favorable to Doze, that claim falls within the scope of the EEO investigation.  See Perry Doze Decl., Exh. 3 (EEO office notice of acceptance); Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006) (holding that court review extends "over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination").

C.    **Retaliation**

To establish a prima facie case for retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the employment action. Dawson, 630 F.3d at 936. There is no genuine dispute as to whether Doze can prove she was subjected to an adverse employment action or there was a causal link between her contact with the EEO office – which is the only conceivable protected activity – and any negative act toward her. First, as discussed above, Doze has not made a prima facie case for either a hostile work environment or any adverse employment action. See *supra* Sections I.A.-B. This is sufficient ground to reject her retaliation claim. See Dawson, 630 F.3d at 936. Even if the acts by Burt, Chung, Capt. Nicholls, or Dr. Geimer-Flanders could be considered "adverse employment actions," Doze provides no evidence of causation or that her colleagues or supervisors knew that she had complained to the EEO office. For all of these reasons, the Court GRANTS the Doze Motion as to Doze's claim for retaliation.

D.    **Summary**

Since there is no dispute of material fact as to whether Doze can make a prima facie case of discrimination or retaliation, the Court GRANTS the Doze Motion in its entirety.

## II. **Banks Motion**

Banks claims he was subjected to a hostile work environment created by co-workers and supervisors, and that he received wrongful LWOP and AWOL charges, and a proposed notice of suspension.[8] [Complaint at ¶¶ 28-33.]

### A. **Exhaustion**

Defendant argues that Banks failed to make contact with an EEO counselor within forty-five days of many of the allegedly discriminatory events, including those comprising his hostile work environment claim. As discussed in the Beavers Order, and incorporated here, Title VII requires contact with an EEO counselor within forty-five days of the alleged discrimination, and failure to make that contact can be dispositive. See 2014 WL 2932479, at *2 (citing 29 C.F.R. § 1614.105(a)(1) and quoting Marugame v. Napolitano, Civil No. 11-00710 LEK-BMK, 2013 WL 4608079, at *9 (D. Hawai'i Aug. 28, 2013)).

Defendant presents undisputed evidence that Banks first contacted the EEO office on May 28, 2008. [Def.'s Concise Statement of Material Fact Regarding Claims of Kelvin Banks, filed 5/9/14 (dkt. no. 80) ("Def.'s Banks CSOF"), Decl. of Annette Perry ("Perry Banks Decl."), Exh. 1 (Formal Complaint of Discrimination, filed July 24, 2008 ("Banks EEO Complaint")) at

---

[8] Banks also alleges that he was "made to wait hours" as an emergency room patient. [Complaint at ¶ 33.] This is not a cognizable claim under Title VII and, thus, the Court rejects it.

Box 12c.]  Thus, any act committed prior to April 13, 2008 is outside the forty-five day window, and not properly exhausted. It is not entirely clear what specific employment actions Banks is raising because the allegations and arguments in the Complaint, the Banks EEO Complaint, Banks's response to interrogatories, and his memorandum in opposition to the Banks Motion are largely vague, conclusory, and inconsistent.  To the extent that he is attempting to allege any discrete acts prior to April 13, 2008, the Court DISMISSES those allegations for failure to exhaust.  The only allegations that clearly fall within the forty-five day window are the notice of proposed suspension that occurred in May 2008 and Banks's hostile work environment claim.[9] These claims have been exhausted, and the Court considers them as follows.

**B.    Notice of Proposed Suspension**

As discussed above, to make a prima facie case for a discrete act of discrimination, a plaintiff must provide evidence that he was "subject to an adverse employment action[.]"  <u>Davis</u>, 520 F.3d at 1089.  However, a proposed adverse employment action

---

[9] The Court rejects Defendant's argument that Banks's hostile work environment claim is far too "vague and conclusory" to show that any discriminatory behavior fell within the forty-five day window and, thus, the Court should dismiss that claim in its entirety.  [Mem. in Supp. of Banks Motion at 6-7.]  While the Court agrees that the allegations are somewhat vague, the Court cannot say that all of the acts fell outside of the window and so rejects this argument.

does not itself constitute an adverse employment action.  Cf.
Hellman v. Weisberg, 360 F. App'x 776, 779 (9th Cir. 2009) ("the
mere threat of termination does not constitute an adverse
employment action" (citing Hardage v. CBS Broad. Inc., 427 F.3d
1177, 1189 (9th Cir. 2005), *amended by* 433 F.3d 672 (9th Cir.
2006), *and* 436 F.3d 1050 (9th Cir. 2006))).

         Defendant has offered evidence that on May 31, 2008
SFC McCaughtry proposed a three-day suspension of Banks for
violating the scope of his practice, failure to follow leave
procedures, and disrespectful behavior towards a supervisor.
[Def.'s Banks CSOF at ¶ 22 (citing Perry Banks Decl., Exh. 29
("Notice of Proposed Suspension")).]  Further, he states that the
Notice of Proposed Suspension was withdrawn "because of
conflicting statements."  [Id.]  Although he argues that he was
falsely accused, Banks does not dispute that the Notice of
Proposed Suspension was withdrawn.[10]  [Plaintiff's Concise
Statement of Facts Opposing Defendant's Motion for Summary
Judgment on the Claims of Kelvin Banks, filed 6/26/14 (dkt. no.
105-1) ("Banks CSOF"), at ¶ 21 (citing id., Decl. of Kelvin Banks
("Banks Decl.") at ¶ 35).[11]]  Since the Court finds that there is

_____

    [10] Nor does he dispute the date of the Notice of Proposed
Suspension although no date is clear from the face of the
document.

    [11] Banks cryptically states in his declaration: "I do not
know what was in Kelly's mind if he considered whether to
                                        (continued...)

no genuine issue of material fact as to whether the Notice of
Proposed Suspension was withdrawn, the Court GRANTS the Banks
Motion as to Banks's claim for a discrete act of discrimination
for the proposed suspension.  See, e.g., Hellman, 360 F. App'x at
779.

### C.  **Hostile Work Environment**

Banks's hostile work environment claim fails for
similar reasons as Doze's.  Other than his declaration, Banks
offers no evidence of a hostile work environment, specifically,
that there were any acts of discrimination toward him.  On the
other hand, Defendant offers ample evidence that Banks's
colleagues and supervisors complained about his work performance
and that he was regularly reprimanded for rule-breaking and
disrespect.

Banks offers six exhibits attached to his CSOF:
(1) three memoranda of record by his supervisors, which appear to
be submitted for Banks's own handwriting on them lodging his
disagreements with their content; [Banks CSOF, Decl. of
Anthony P.X. Bothwell Opposing Defendant's Motion for Summary
Judgment on the Claims of Kelvin Banks ("Bothwell Banks Decl."),

---

[11](...continued)
withdraw a proposed suspension.  I do know that I was falsely
accused of violating leave procedures, disrespect, and violating
scope of practice."  [Banks Decl. at ¶ 35.]  While this is not a
clear admission that the Notice of Proposed Suspension was in
fact withdrawn, the Court does not interpret it as a denial.

Exhs. 1, 2, 4;] (2) a Physician's Discharge Summary, which
purports to show Banks was in the hospital for his own treatment
on the same day that he supposedly received a verbal counseling;
[id., Exh. 3;] and (3) short excerpts from the depositions of
Maj. Meeks and Capt. Kelly, which relate to an allegation that
Capt. Kelly ordered his reports to "get rid of the slackers."
[id., Exhs. 5-6].

        In addition to these exhibits, which do not provide any
evidence of discrimination, Banks offers his own declaration.  In
it, he claims:

• Banks's intermediate supervisor, SFC Montague, racially harassed
    Banks, made false allegations regarding Banks's behavior,
    and stated that he wanted to drive Banks out of Tripler;
    [Banks Decl. at ¶¶ 13, 16, 18;]

• SFC Montague had a practice of creating false counseling
    statements, which Capt. Kelly secretly kept from Banks; [id.
    at ¶¶ 17, 23;]

• on February 20, 2008, SFC Montague falsely accused Banks of
    violating leave procedure and shouted at Banks, causing him
    to become faint, check into the emergency room, and take
    sick leave; [id. at ¶¶ 27, 32;]

• upon return from sick leave, Banks received a memorandum forged
    with his signature, stating that he had been orally
    counseled for failure to get authorization for leave; [id.
    at ¶ 28;]

• management used the false memorandum in creating the May 2008
    notice of proposed suspension; [id. at ¶ 33;]

• Tripler staff created another false memorandum, dated
    February 27, 2008, stating that Banks was counseled for
    various infractions, and including his signature, although
    he was in the intensive care unit ("ICU") for treatment at
    that time; [id. at ¶¶ 29-31;]

- although Maj. Meek purported to investigate an allegation that Banks improperly administered an injection to a patient, the outcome was entirely preordained, Banks's statement was disregarded, and Maj. Meeks relied entirely on statements by white employees; [id. at ¶¶ 25-26;]

- Capt. Kelly contacted Banks's physician in an attempt to have him make a determination that Banks was unfit to do his job, which violated the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), and other of Banks's rights; [id. at ¶ 36;] and

- Capt. Kelly called Banks a drug addict, and claimed that he had gone AWOL, when in fact Banks completed his duties satisfactorily, and followed all leave protocol [id. at ¶¶ 7, 10, 11, 14, 15, 19, 21, 22, 34].

As with Doze, the Court finds that these statements by Banks, unsupported by any other evidence, fail to raise a genuine dispute of material fact. They consist of conclusory, self-serving allegations – not the specific and substantial evidence necessary to defeat summary judgment. See Boeing, 577 F.3d at 1049; Nilsson, 503 F.3d at 952; Hernandez, 343 F.3d at 1116. Further, there is no evidence that any of the purported acts of discrimination, if true, were based on race. See Surrell, 518 F.3d at 1108.

On the other hand, Defendant offers undisputed contemporaneous evidence, showing a consistent and long-running history of poor performance by Banks:

- in late 2007, SFC Montague advised staff to write down observations about Banks after he received numerous complaints about Banks; [Perry Banks Decl., Exhs. 8 (Decl. of Cory Montague) at ¶ 9 (Montague's request); 17 (four complaints);]

- on October 3, 2007, SFC Montague counseled Banks for poor

performance, and for creating "an unhealthy work
atmosphere . . . [;]" [id., Exh. 16 (10/4/07 Mem. for
Record);]

- on October 27, 2007, Staff Sergeant Carlitos C. Grant, Jr.
  ("Sgt. Grant") – who also supervised Banks prior to February
  2008 – counseled Banks for requesting leave when he had no
  annual leave available, and notified Banks that future
  violations would result in disciplinary action; [id., Exh.
  18 (11/5/07 Mem. for Record);]

- in November and December 2007, Sgt. Grant twice counseled Banks
  for failure to perform his job duties and insubordination,
  as well as use of the drug Demerol at work; [id., Exh. 19
  (12/10/07 Mem. for Kelvin Banks);]

- on December 26, 2007, Sgt. Grant proposed Banks be issued a
  letter of reprimand for numerous infractions, including not
  following leave procedure and discourteous behavior, and on
  January 30, 2008 Capt. Kelly signed the proposal; [id.,
  Exhs. 20 (12/26/07 Notice of Proposed Reprimand), 21
  (1/30/08 Notice of Proposed Reprimand);]

- in February 2008, colleagues reported that Banks had requested
  medication for injection, and observed suspicious behavior
  leading them to believe Banks was using drugs while on duty,
  and as a result Maj. Meek conducted an investigation and
  requested disciplinary action; [id., Exhs. 22 (email
  documentation of events); 23 (2/19/08 Mem. for Record);]

- later in February 2008, Banks engaged in insubordination and
  failed to comply with leave protocol, culminating in
  counselings; [id., Exhs. 24 (2/27/08 Mem. for Record), 25
  (2/28/08 Mem. for Record);]

- on April 8, 2008, SFC McCaughtry found Banks AWOL for failure to
  follow leave protocol; [id., Exh. 28 (9/26/08 Mem. for
  Record);]

- on May 31, 2008, SFC McCaughtry proposed a suspension for
  failure to follow leave procedure and disrespectful
  behavior; [id., Exh. 29 (Notice of Proposed Suspension);]
  and

- between July 2006 and July 2008, Banks was on annual leave, sick
  leave, advanced leave, and/or leave without pay for more
  than 1,500 hours [id., Exh. 13 (3/25/09 Report of
  Investigation) at 3].

This evidence shows that any tension between Banks and his supervisors related to Banks's performance and not his race. Like Doze, it appears that Banks felt negatively targeted at Tripler and that his supervisors were unfair to him. Banks, however, does not make the showing of objective evidence of severe and pervasive discrimination required by Title VII. <u>See</u> <u>Harris</u>, 510 U.S. at 21. Thus, the Court GRANTS the Banks Motion as to Banks's claim of a hostile work environment.

### D. **Retaliation**

Banks does not provide specific allegations in the Complaint or provide any evidence of retaliation. Thus, for the same reasons as with Doze, <u>see</u> *supra* Section I.C., and additionally, because he fails to state a claim, <u>see</u> Fed. R. Civ. P. 12(b)(6), the Court grants the Banks Motion as to Count II.

### E. **Summary**

Since (1) Banks has not exhausted any of his claims other than those for the May 2008 Notice of Proposed Suspension and hostile work environment; (2) there is no dispute of material fact as to whether Banks can make a prima facie case of discrimination as to those claims; and (3) he fails to state a claim for retaliation, the Court GRANTS the Banks Motion in its entirety.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion for Dismissal and Summary Judgment on the Claims of Plaintiff Marceau Doze-Guillory, filed on May 6, 2014, and Defendant's Motion for Dismissal and Summary Judgment on the Claims of Plaintiff Kelvin Banks, filed on May 9, 2014, are HEREBY GRANTED. The Court directs the Clerk's Office to terminate Doze and Banks as parties.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 29, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**KELVIN BANKS, ET AL. VS. JOHN MCHUGH, ET AL**; CIVIL 11-00798 LEK-KSC; ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF MARCEAU DOZE-GUILLORY; AND GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF KELVIN BANKS