IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KELVIN BANKS, ALISON BEAVERS, ) CIVIL NO. 11-00798 LEK-KSC
DAVID "FLYING WITH EAGLES" )
BEVETT, CHARLES W. DICKEY, )
MARCEAU DOZE-GUILLORY, EDWARD )
MANIGAULT, TAMANEE MUNDY, )
WANDA THOMAS, SYLVIA VEGA, )
and CHINY WANG, )
                                )
          Plaintiffs,           )
                                )
     vs.                        )
                                )
JOHN McHUGH, SECRETARY          )
DEPARTMENT OF THE ARMY;         )
LEON E. PANETTA, SECRETARY,     )
DEPARTMENT OF DEFENSE,          )
                                )
          Defendants.           )
_____ )


**ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND
SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF TAMANEE
MUNDY; AND GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND
SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF CHINY WANG**

          Before the Court are: Defendant Secretary, Department

of the Army, John M. McHugh's ("Defendant") Motion for Dismissal

and Summary Judgment on the Claims of Plaintiff Tamanee Mundy,

filed on May 13, 2014 ("Mundy Motion"); and Defendant's Motion

for Dismissal and Summary Judgment on the Claims of Plaintiff

Chiny Wang, filed on May 14, 2014 ("Wang Motion," collectively

"Motions").  [Dkt. nos. 84, 88.]  Plaintiff Tamanee Mundy

("Mundy") filed her memorandum in opposition on July 27, 2014,

and Plaintiff Chiny Wang ("Wang") filed her memorandum in

opposition on July 27, 2014 as well.  [Dkt. nos. 120, 121.]

Defendant filed his reply to Wang on July August 4, 2014 and his

reply to Mundy on August 5, 2014.  [Dkt. nos. 125, 127.]  The

Court finds these matters suitable for disposition without a

hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice

of the United States District Court for the District of Hawai`i

("Local Rules").  After careful consideration of the Motions,

supporting and opposing memoranda, and the relevant legal

authority, Defendant's Motions are HEREBY GRANTED for the reasons

set forth below.

## BACKGROUND

The procedural facts of this case were set forth in

this Court's June 30, 2014 Order Granting Defendant's Motion for

Dismissal or Summary Judgment on Plaintiff Alison Beavers' Claims

("Beavers Order").  [Dkt. no. 112.]  The original plaintiffs

filed their complaint on December 30, 2011 ("Complaint").[1]

---

[1] One case, that of Wanda Thomas, was severed from the
original case.  See 9/28/12 Order Granting in Part and Denying in
Part Defendants' Motion to Dismiss and Sever Plaintiffs' Claims
("9/28/12 Order"), *available at* 2012 WL 4715162.  The Court
granted summary judgment and dismissal for Defendant on Thomas's
case and Beavers's claims, and on Plaintiffs David Bevett's and
Charles Dickey's, Marceau Doze-Guillory's and Kelvin Banks's
claims by orders dated June 30, 2014, July 31, 2014, and August
29, 2014.  Those orders are available at 2014 WL 2968689 (Order
Granting Defendant's Motion for Summary Judgment ("Thomas
Order")), 2014 WL 2932479 (Beavers Order), 2014 WL 3778319 (Order
Granting Defendant's Motion for Dismissal and Summary Judgment on
the Claims of Plaintiff Charles Dickey; and Granting Defendant's
(continued...)

Mundy is a disabled African American veteran who worked as a supervisory health system specialist in the emergency department of Tripler Army Medical Center ("Tripler") from 2004 to 2009 under the supervision of Colonel Kenneth Batts ("Col. Batts") and, later, Captain Kenneth Kelly ("Capt. Kelly"), both Caucasian. She alleges that Col. Batts verbally abused her, retaliated against her, and unfairly charged her as absent without leave ("AWOL"). She further claims that: Col. Batts admitted to her that he would not have hired her if she had not "sounded white over the phone"; Capt. Kelly instructed her to resign one day before she was scheduled to receive surgery, and he ordered her to work a full-time schedule even though she had agreed to work only half-time on account of her disability; and Major William Meek ("Maj. Meek") ordered her to report to work even though she was in post-surgery convalescence. Mundy also claims that she received an unfavorable performance evaluation, and that she was wrongfully terminated on April 25, 2009. [Complaint at ¶¶ 74-87.]

---

[1](...continued)
Motion for Dismissal and Summary Judgment on the Claims of David Bevett ("Dickey/Bevett Order")), and docket number 134 (Order Granting Defendant's Motion for Dismissal and Summary Judgment on the Claims of Plaintiff Marceau Doze-Guillory; and Granting Defendant's Motion for Dismissal and Summary Judgment on the Claims of Kelvin Banks ("Doze/Banks Order")), respectively. The Court dismissed the claims of Plaintiff Edward Manigault in the 9/28/12 Order, and the parties stipulated to the dismissal of the claims of Plaintiff Sylvia Vega on April 7, 2014. [Dkt. no. 66.]

Wang, who is Chinese-Laotian American, was a civilian doctor of pharmacy at Tripler from 2007 to 2010, under the supervision of Captain Aparna Raizada ("Capt. Raizada") and Captain Peter Franklin ("Capt. Franklin"), who are Indian and Caucasian, respectively. She alleges that she was insulted and demeaned, charged with AWOL despite making legitimate requests for sick leave, denied training opportunities, and notified on December 28, 2010 that she was terminated. [Id. at ¶¶ 97-101.]

Mundy and Wang allege the following claims: discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-1, *et seq.* ("Count I"); and retaliation in violation of Title VII ("Count II").[2]  They seek the following relief: compensatory damages; removal of derogatory material from their personnel files; disciplinary measures against the officers, managers, and supervisors named in the Complaint; attorneys' fees; and all other appropriate relief. [Id. at pgs. 19-20.]

In the instant Motions, Defendant seeks dismissal and summary judgment on all claims by Mundy and Wang in the Complaint.

---

[2] The Court dismissed their third claim, for discrimination and retaliation in violation of the Equal Protection Clause of the Fifth Amendment ("Count III"), in the 9/28/12 Order, reasoning that it was preempted by Title VII.  2012 WL 4715162, at *6.

## DISCUSSION

### I. **Mundy Motion**

Mundy alleges, in essence, that Col. Batts subjected her to a hostile work environment, and then, when Capt. Kelly became her supervisor, Kelly wrongfully forced her out through a string of hostile actions. [Complaint at ¶¶ 74-87.]

The Beavers Order sets forth the applicable administrative and substantive framework for Title VII claims, as well as the burdens of proof and standards for proving discrimination and retaliation. See 2014 WL 2932479, at *2, *5-6, *8-10. According to these standards, which are incorporated here, as well as the law set forth below, Mundy has not shown that she has properly exhausted all of her administrative remedies or that she can establish a prima facie case of discrimination or retaliation. See, e.g., Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011) (describing a plaintiff's burden in a retaliation case); Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (burden in discrimination case); Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch, 572 F.3d 1039, 1043-44 (9th Cir. 2009) (describing pre-filing exhaustion requirements).

A.  **Exhaustion**

Defendant argues that Mundy failed to make contact with an Equal Employment Opportunity ("EEO") counselor within forty-five days of any incidents involving Col. Batts.  As discussed in the Beavers Order, and incorporated here, Title VII requires contact with an EEO counselor within forty-five days of the alleged discrimination, and failure to make that contact can be dispositive.  See 2014 WL 2932479, at *2 (citing 29 C.F.R. § 1614.105(a)(1) and quoting Marugame v. Napolitano, Civil No. 11-00710 LEK-BMK, 2013 WL 4608079, at *9 (D. Hawai'i Aug. 28, 2013)).

Defendant presents undisputed evidence that Mundy first contacted the EEO office on May 20, 2008.  [Def.'s Concise Statement of Material Fact Regarding Claims of Tamanee Mundy, filed 5/13/14 (dkt. no. 85) ("Def.'s Mundy CSOF"), Decl. of Annette Perry ("Perry Mundy Decl."), Exh. 21 (Formal Complaint of Discrimination, dated June 28, 2014 ("Mundy EEO Complaint")) at 3, Box 12c.[3]]  Thus, any act committed prior to April 4, 2008 is outside the forty-five day window, and any claims based on these

_____

[3] Although both Mundy and Defendant offer versions of the Formal Complaint of Discrimination, [Perry Mundy Decl., Exh. 21; Plaintiff's Concise Statement of Material Fact Regarding Claims of Tamanee Mundy, filed 7/27/14 (dkt. no. 121) ("Mundy CSOF"), Decl. of Anthony P.X. Bothwell ("Mundy Bothwell Decl."), Exh. 8,] the Court cites to Defendant's version herein since it is the official, filed version, whereas Mundy's appears to be an incomplete, unexecuted draft.

acts were not properly exhausted.

The evidence shows that Col. Batts supervised Mundy until she was transferred, the first week of January 2008, and placed under the supervision of Capt. Kelly.  [Id., Exh. 1 (Trans. of Fact Finding Conference ("FFC"), excerpts of Tamanee Mundy testimony ("Def.'s Mundy FFC Trans.")) at 67 (testifying that she worked for Batts "[f]rom February – the end of February of '04 until the first week of January of '08"), 87 ("I moved to the ER in January."), Exh. 2 (Trans. of FFC, excerpts of Capt. Kenneth Kelly testimony ("Def.'s Kelly FFC Trans.")) at 121 ("My recollection is that about January 4th, Tamanee Mundy came to work for me and no longer would be working directly for Colonel Batts.").]  Thus all, allegedly discriminatory incidents with Col. Batts occurred prior to early January 2008, and Mundy does not argue or provide any evidence otherwise.[4]  Since the

_____

[4] Mundy does state that Col. Batts supervised her until May 11, 2008.  [Mundy CSOF at ¶¶ 2-3, 5; id., Decl. of Tamanee Mundy ("Mundy Decl.") at ¶ 6 ("I was assigned to the Emergency Department on May 11, 2008 as the administrative support to the Emergency Department.  COL Batts told me that I was a shared asset to both departments until they hired someone for the Family Medicine Clinic.").]  However, she provides no evidence that she had any contact with Col. Batts after early January 2008 and does not allege that he engaged in any discrimination toward her in that time period.  Further, Mundy's statement in her declaration is directly contradicted by the other evidence, including her own testimony at the FFC as quoted above, and the Mundy EEO Complaint, which divides her allegations between Capt. Kelly, beginning in January 2008, and "DURING COL BATTS TIME FRAME".  [Mundy EEO Complaint at 12.]  Thus, the Court does not find that
(continued...)

incidents with Col. Batts necessarily fall outside of the forty-
five day window, the Court DISMISSES the allegations related to
Col. Batts, [Complaint at ¶¶ 74-79,] for failure to exhaust.[5]

**B.    Hostile Work Environment**

"To establish a prima facie case for a hostile-work
environment claim, [a plaintiff] must raise a triable issue of
fact as to whether (1) the defendants subjected her to verbal or
physical conduct based on her race; (2) the conduct was
unwelcome; and (3) the conduct was sufficiently severe or
pervasive to alter the conditions of her employment and create an
abusive working environment."  Surrell v. Cal. Water Serv. Co.,

---

[4](...continued)
Mundy's declaration creates a genuine issue of material fact of
whether Col. Batts continued to supervise Mundy after she was
transferred in January 2008, see Nilsson v. City of Mesa, 503
F.3d 947, 952 (9th Cir. 2007), and Mundy makes no allegation
concerning Col. Batts within the forty-five day window.

[5] This includes the hostile work environment claim with
regard to Col. Batts.  Mundy has made no showing that the actions
by Col. Batts and Capt. Kelly were "part of the same unlawful
employment practice."  Nat'l R.R. Passenger Corp. v. Morgan, 536
U.S. 101, 117 (2002); see also, e.g., Porter v. Cal. Dep't of
Corr., 419 F.3d 885, 893 (9th Cir. 2005) (considering "whether
the earlier and later events amounted to 'the same type of
employment actions, occurred relatively frequently, [or] were
perpetrated by the same managers,'" and holding that "the
messages dispatched to Porter by Ford and the unnamed officers
are not connected to the same hostile-environment practice as the
conduct ascribed to Wheeler and DeSantis" (alteration in Porter)
(quoting Morgan, 536 U.S. 101, 116, 120, 122 S. Ct. 2061)).

518 F.3d 1097, 1108 (9th Cir. 2008) (alteration omitted).  If

using circumstantial evidence to prove discrimination, it must be

"specific and substantial to defeat the employer's motion for

summary judgment."  E.E.O.C. v. Boeing Co., 577 F.3d 1044, 1049

(9th Cir. 2009) (citation and internal quotation marks omitted).

The Ninth Circuit has rejected claims that solely rely on

conclusory statements.  For example:

> [The plaintiff] asserts that several of these
> incidents occurred in "late 1998" or 1999.
> However, he offers no support for these asserted
> dates other than his declaration.  Indeed, he
> offers no specific dates for any of the actions.
> [The plaintiff's] conclusory allegations,
> unsupported by facts, are insufficient to survive
> a motion for summary judgment.  [The defendant]
> therefore is entitled to summary judgment on [the
> plaintiff's] failure to promote claims.

Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir.

2003) (citation omitted).  Similarly, "[a] conclusory,

self-serving affidavit, lacking detailed facts and any supporting

evidence, is insufficient to create a genuine issue of material

fact."  Nilsson v. City of Mesa, 503 F.3d 947, 952 (9th Cir.

2007) (alteration in Nilsson) (citation and internal quotation

marks omitted).

Defendant argues that Mundy fails to make a prima facie

case of a hostile work environment because there is no evidence

that Capt. Kelly discriminated against her on the basis of race.

The Court agrees.

The crux of Mundy's claim is that Capt. Kelly wanted her out of his department and he fabricated pretexts, including initiating a fraud investigation, to do so. However, even viewing the evidence in the light most favorable to her, Mundy does not provide any evidence that Capt. Kelly or other Tripler employees's negative conduct was racially-motivated. See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) (at summary judgment, the court "must determine, viewing the facts in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law" (citation and quotation marks omitted)).

The only evidence purportedly related to race that Mundy offers is the disputed statement that Capt. Kelly told his reports at a Key Leaders Meeting to "get rid of the slackers." Compare Bothwell Mundy Decl., Exh. 10 (Trans. of 9/16/09 Depo. of William J. Meek, II) at 53 ("I remember him making statements to that effect of get rid of the slackers.") with id., Exh. 11 (Trans. of 6/15/09 Depo. of Captain Kenneth J. Kelly) at 10-12 (denying he ever made a statement to "[g]et rid of the slackers" or "anything like that"). The Court finds that the term "slackers" is racially-neutral, particularly in the context of a team meeting regarding work performance. Thus, even assuming Capt. Kelly made the "slackers" statement, there is no evidence –

other than Mundy's self-serving declaration – that any actions by her colleagues and supervisors were based on race.

Mundy relies almost exclusively on her own declaration to claim that she suffered severe and pervasive discrimination. At best, the declaration and her evidence show that:

• Although he knew of Mundy's disabilities and that she had worked part time since 2006, when Capt. Kelly became her supervisor, he demanded that she work full time; [Mundy Decl. at ¶¶ 5, 10, 23;]

• After surgery, no one from management called to check on Mundy's health but they did contact her about work, including Maj. Meek, who ordered that Mundy report to the office to remove her personal items from her desk; [id. at ¶¶ 11, 13;]

• Capt. Kelly attempted to fire Mundy on the spot because he was hot-tempered and did not want her in his area since she could not work eight-hour shifts, she was African American, and she had filed an EEO complaint; [id. at ¶ 20; Bothwell Mundy Decl., Exh. 3 (Trans. of 2/28/13 Depo. of James Scott Hallmark ("Hallmark Depo.")) at 16-17 (stating Kelly attempted to fire Mundy and admitting Kelly would get "worked up"), 18 (stating Kelly did not want Mundy in his area);]

• Capt. Kelly initiated a criminal investigation into purported fraud, which showed at most, that she had inadvertently approved improper transactions by a colleague; [Mundy Decl. at ¶¶ 12, 15;]

• Capt. Kelly obtained a debarment letter against Mundy; [Bothwell Mundy Decl., Exh. 4 (Limited Debarment Letter, stamped Sept. 12, 2008);] and

• The difficult work environment negatively impacted Mundy's health and she retired for medical reasons [Mundy Decl. at ¶¶ 19-20; Bothwell Mundy Decl., Exhs. 5 (2008 ltrs. from Dr. Nakatsu describing "exacerbation" of Mundy's medical issues), 6 (Medical Report for Psychiatric Claim, dated June 9, 2008), 9 (5/2/08 email from Mundy to Batts and Hallmark, describing "stress and anxiety")].

The support for these claims comes mostly from the
Mundy Declaration, and it consists of conclusory allegations.
This is not the type of evidence required to defeat summary
judgment.  <u>See</u> <u>Nilsson</u>, 503 F.3d at 952; <u>Hernandez</u>, 343 F.3d at
1116.

Further, even viewing the evidence, including the
declaration, in the light most favorable to Mundy, she still does
not create a genuine issue of material fact as to whether she
experienced a hostile work environment on the basis of race.
Mundy's declaration and exhibits provide some evidence that Capt.
Kelly did not respect Mundy or work well with her, and that he
may have even forced her out of his department.  However, Capt.
Kelly appears to have been motivated by Mundy's inability to work
an eight-hour day and her need to take additional time to
convalesce after surgery.  In other words, if anything, he acted
on the basis of her disability, not her race.  But Mundy has not
brought a disability claim before this Court.  <u>See, e.g.</u>,
Complaint at ¶¶ 74-87; Mundy Mem. in Opp. at 1 (Mundy
"experienced racial discrimination and reprisal"), 10 ("alleged
discrimination based on 'African American' race and 'Black'
color").[6]  While the Court is sympathetic to Mundy's position and

_____

    [6] Mundy does not argue in her memorandum that she suffered
discrimination on the basis of disability, or cite to any support
in her exhibits either.  However, even if she did, her failure to
                                                    (continued...)

understands that she felt mistreated and singled out at Tripler, the law requires objective evidence of severe and pervasive racial discrimination, and Mundy has not presented such evidence. See Harris, 510 U.S. at 21. Mundy fails to raise a genuine issue of material fact as to a hostile work environment, and thus the Court GRANTS the Mundy Motion as to this claim.

## C. **Discrete Acts**

A plaintiff may prove discrimination through either a hostile work environment or discrete acts of discrimination. Examples of discrete acts are termination, failure to promote, denial of transfer, or refusal to hire. To establish a prima facie case of discrete acts of discrimination, a plaintiff must show that: "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). An adverse employment action is an action that "produce[s] a material change in the terms and conditions of [a worker's] employment[.]" Kob

---

⁶(...continued)
raise the issue in the Complaint is determinative. See Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court" (citations omitted)).

v. Cnty. of Marin, 425 F. App'x 634, 636 (9th Cir. 2011) (citing

Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115,

1125-26 (9th Cir. 2000)).

Even if the Court construes some of the conduct at

issue by Tripler staff, such as the fraud investigation, Capt.

Kelly's reassignment of Mundy to a different department in June

2008, and his denial of her voluntary leave transfer also in June

2008, as discrete acts of discrimination, Mundy's claims still

fail.[7]  First, Mundy has not provided any evidence that any of

these actions materially changed the terms and conditions of her

employment.  See Kob, 425 F. App'x at 636.  Second, she has not

offered any evidence that similarly situated individuals received

disparate treatment.  Davis, 520 F.3d at 1089.  In fact, Mundy's

own evidence shows that Capt. Kelly had a volatile temper in

---

[7] Mundy also claims she was issued an unfavorable
performance evaluation.  [Complaint at ¶ 86.]  Major James Scott
Hallmark ("Maj. Hallmark") issued the evaluation, including
legitimate non-discriminatory explanations for the scores.
[Perry Mundy Decl., Exh. 7 (September 2008 emails, including Maj.
Hallmark's assessment and Mundy's responses).]  Mundy has
admitted that Maj. Hallmark did not discriminate against her,
[Def.'s Mundy FFC Trans. at 14,] and, thus, the Court does not
consider this among the purported discrete act of discrimination.

Further, the Court finds that Mundy's termination in April
2009 was not discriminatory, since she was terminated for failing
to return to work and to respond to Capt. Kelly's demand that she
report.  [Bothwell Mundy Decl., Exh. 13 (Notice of Present
Employment Status, dated Aug. 19, 2008); Perry Mundy Decl., Exhs.
9 (Notice of Decision on Proposed Removal, dated April 8, 2009),
20 (Notification of Personnel Action, effective April 25, 2009).]

general, [Hallmark Depo. at 16-17,] and Maj. Meek may have

mistreated all inferiors regardless of race [id. at 36-37]. This

shows just the opposite of what Mundy must prove, that similarly

situated individuals were treated the same as Munday was treated.

See Davis, 520 F.3d at 1089. Since Mundy does not raise a

genuine issue of material fact that any of the negative actions

constituted adverse employment actions or that she was treated

unequally, the Court GRANTS the Mundy Motion as to her claims for

discrete acts of discrimination.

    **D.**   **Retaliation**

      To establish a prima facie case for retaliation, a

plaintiff must show that: (1) she engaged in a protected

activity; (2) she was subjected to an adverse employment action;

and (3) there is a causal link between the protected activity and

the employment action. Dawson, 630 F.3d at 936.

      At most, Mundy's evidence, based mostly on her own

declaration, argues:

- Capt. Kelly was aware of Mundy's attempted EEO complaint as
early as June 2, 2008; [Mundy Decl. at ¶ 21; Bothwell Mundy
Decl., Exh. 7;] and

- After Mundy filed the EEO complaint and testified for Thomas,
Capt. Kelly and Maj. Hallmark mistreated her and tried to
push her out, including by giving her an undeserved poor
evaluation [Mundy Decl. at ¶¶ 7, 22, 33].

      However, this purported evidence does not support a

claim for retaliation. First, as discussed above, Mundy has not

made a prima facie case for either a hostile work environment or any adverse employment actions.  See *supra* Sections I.B.-C.  This is sufficient ground to reject her retaliation claim.  See Dawson, 630 F.3d at 936.  Even if the alleged conduct by her supervisors could be considered "adverse employment actions," Mundy provides no evidence of causation between her contact with the EEO office and the Thomas FFC testimony in 2005 and those actions, more than these simple conclusory statements.  For these reasons, the Court GRANTS the Mundy Motion as to Mundy's claim for retaliation.

   **E.** **Summary**

   Since Mundy has failed to exhaust her remedies as to her claims regarding Col. Batts, and there is no dispute of material fact as to whether Mundy can make a prima facie case of discrimination or retaliation as to Capt. Kelly and Maj. Meek, the Court GRANTS the Mundy Motion in its entirety.

**II.** **Wang Motion**

   Wang's claims focus on purported racial conflict with her supervisor, Capt. Raizada, and training related to a new drug Vancomycin.  [Complaint at ¶¶ 96-102.]  However, Wang does not make a prima facie case of discrimination and, instead, the evidence shows that conflict with Capt. Raizada and other supervisors and colleagues arose from Wang's poor performance,

and that Wang was properly trained.

## A. __Exhaustion__

Defendant argues that Wang failed to exhaust her claim
that Capt. Franklin wrongly charged her AWOL, since that incident
fell well outside the forty-five day window for contact with an
EEO counselor. [Mem. in Supp. of Wang Motion at 5-8.]

It is undisputed that Wang first contacted the EEO
office on in April 2010. [Def.'s Concise Statement of Material
Fact Regarding Claims of Chiny Wang, filed 5/14/14 (dkt. no. 89)
("Def.'s Wang CSOF"), Decl. of Annette Perry ("Perry Wang
Decl."), Exh. 44 (Formal Complaint of Discrimination, dated
6/25/10 ("Wang First EEO Complaint")) at Box 12c (Date of initial
contact: 4/5/10)[8].] It is also undisputed that Capt. Franklin
ceased to supervise Wang sometime in 2008, more than a year
before Wang contacted the EEO office. [Id., Exh. 2 (Trans. of
10/21/10 FFC, excerpts of Chiny Wang testimony ("Def.'s Wang

_____

[8] Wang also filed another EEO complaint, and stated in that
complaint that her first date of contact was April 27, 2010.
[Perry Wang Decl., Exh. 45 (Formal Complaint of Discrimination,
dated 2/14/11 ("Wang Second EEO Complaint")) at Box 12c (Date of
initial contact: 4/27/10).] However, in her CSOF, Wang does not
dispute the initial date of contact, and states that she filed
her first EEO complaint on April 27, 2010. [Plaintiff's Concise
Statement of Material Facts Regarding Claims of Chiny Wang, filed
7/27/14 (dkt. no. 120) ("Wang CSOF"), at ¶ 32.] Her CSOF cites
to her FFC testimony. [Wang CSOF, Decl. of Anthony P.X. Bothwell
("Bothwell Wang Decl."), Exh. 3 at 8.] Although Wang's testimony
appears to be mistaken, any dispute on this narrow issue of when
in April 2008 she first contacted an EEO counselor is immaterial
to the Wang Motion.

10/21/10 FFC Trans.")) at 10, 12; Wang CSOF at § 2.]  Therefore,

Wang clearly did not make contact with the EEO counselor within

the forty-five day window and, thus, the Court DISMISSES this

claim regarding the AWOL incident for failure to exhaust.[9]

### B.  __Hostile Work Environment__

Wang claims that Capt. Raizada and her substitute

supervisor, Major James Masterson ("Maj. Masterson"), created a

hostile work environment and encouraged Wang's colleagues,

including Lincoln Masuda and Sharleen Kwok, to harass her.

[Complaint at ¶¶ 97, 99.]  "To determine whether conduct was

sufficiently severe or pervasive to violate Title VII, we look at

'all the circumstances, including the frequency of the

discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work

performance.'"  Vasquez v. Cnty. of Los Angeles, 349 F.3d 634,

642 (9th Cir. 2003) (quoting Clark County Sch. Dist. v. Breeden,

532 U.S. 268, 270–71, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)).

The only evidence in the records relating to racist

---

[9]  Wang also alleges discrimination by the EEO office's
attorneys toward Wang's counsel's legal staff during a deposition
and at one of the FFCs.  [Complaint at ¶ 102.]  However, as the
Court has already recognized in the Bevett/Dickey Order,
Title VII does not support a cause of action for alleged
discrimination during the EEO claim process.  See 2014 WL
3778319, at *3 n.9.  Therefore, the Court also dismisses this
claim.

comments shows that: (1) Maj. Masterson purportedly stated: "All chinese [sic] people are loud, just like you."; [Perry Wang Decl., Exh. 1 (Dr. Chiny Wang's Response to Interrogatories ("Wang Interrog. Resps.")) at Resp. 2;] and (2) Capt. Raizada allegedly said that "chicken Chinese feet, I cannot stand that, that's scary, that's disgusting, how can you eat Chinese chicken feet" and she "made fun of Chinese, the way Chinese people talk. Fy dollah (phonetic), fy dollah for Subway Sandwiches, fy dollah." [Id., Exh. 5 (Trans. of 6/9/11 FFC, excerpts of Chiny Wang testimony ("Def.'s Wang 6/9/11 FFC Trans.")) at 34-36.]

While the Court agrees that such comments are tasteless, and reflect poorly on Tripler staff and the Army in general if made, the Court does not find that these isolated comments rise to the level of creating a hostile work environment in violation of Title VII.  See Alioto v. Associated Exch. Inc., 482 F. App'x 222, 223 (9th Cir. 2012) ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (quoting Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1034 (9th Cir. 2005))).  For example, in Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003), the Ninth Circuit concluded:

> We think the actions of Manatt's co-workers
> generally fall into the 'simple teasing' and
> 'offhand comments' category of non-actionable

> discrimination. Manatt overheard jokes in which
> the phrase 'China man' was used. And she
> overheard a reference to China and communism. But
> on only a couple of occasions did Manatt's
> co-workers or supervisor direct their racially
> insensitive 'humor' at Manatt. One such instance
> occurred when Barbara Green and Vincent Correia
> ridiculed Manatt for mispronouncing 'Lima.'
> Another instance occurred when Green and Correia,
> upon seeing Manatt, pulled their eyes back with
> their fingers in an attempt to imitate or mock the
> appearance of Asians.

Though the Court might not describe the three incidents involving

Wang as "simple teasing," it does find that they are less

egregious than the incidents rejected in Manatt.

In addition to the specific claims of racist comments,

Wang makes general conclusory statements about non-racially

charged events. For example, she claims that:

•Capt. Raizada picked on Wang, yelled at her, and taunted her;
   [Bothwell Wang Decl., Exh. 1 (Trans. of 4/27/11 Depo. of
   Chiny Wang ("Wang Depo.")) at 92 (Raizada was "screaming and
   yelling" at Wang, and engaging in "[p]ublic humiliation"
   because Wang wore open-toed shoes), Exh. 3 (Trans. of 6/9/11
   FFC, excerpts of Chiny Wang testimony ("Pltf.'s Wang 6/9/11
   FFC Trans.")) at 19 (Raizada threw her water away and
   wouldn't let her drink), Exh. 5 (Trans. of 10/21/10 FFC,
   excerpts of Chiny Wang testimony ("Pltf.'s Wang 10/21/10 FFC
   Trans.")) at 41 (Raizada watched Wang "every step");]

•Taking cues from Capt. Raizada, Wang's colleagues made fun of
   her and isolated her; [Pltf.'s Wang 6/9/11 FFC Trans. at 16-
   17 (coworker demeaned Wang by pretending to throw her water
   bottle away and spelling trash in a racist way); Wang Depo.
   at 13 (Kwok and Masuda harassed Wang "on a daily basis"),
   63-64 (her colleagues left her alone at the pharmacy while
   they got lunch, without telling her);] and

•Wang was in a car accident in August 2008, when she was
   distracted due to harassment by Maj. Masterson, and suffered
   pain as a result [Wang Depo. at 14-15 (pain from accident),

118 (in accident after she received an email about "how bad a person [she] was")].

However, as with Mundy, the Court gives little weight to these self-serving, conclusory allegations. See Nilsson, 503 F.3d at 952; Hernandez, 343 F.3d at 1116. Taken together, the three incidents and the conclusory statements show, at most, teasing, tasteless remarks, and a highly unpleasant work atmosphere. This is not the "specific and substantial" evidence of severe and pervasive discrimination necessary to defeat summary judgment. See Boeing, 577 F.3d at 1049; see also Jura v. Cnty. of Maui, Civ. No. 11-00338 SOM/RLP, 2012 WL 5187845, at *7 (D. Hawai`i Oct. 17, 2012) ("Title VII is not 'a general civility code for the American workplace.'" (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998))). Since the Court finds that Wang has failed to make a prima facie case for a hostile work environment, the Court GRANTS the Wang Motion as to that claim.

C.    **Discrete Acts**

Wang also makes claims for the following discrete acts: Capt. Raizada gave her an unwarranted unsatisfactory evaluation, her supervisors withheld training from her, and provided insufficient training so she would fail on the administration of Vancomycin; Capt. Raizada blamed Wang for making an error, which she did not make; and the Army wrongfully terminated her. The

21

pieces of evidence that Wang provides, which are all her own

statements, show that at best:

• Wang never earned an unsatisfactory evaluation before Capt.
    Raizada gave her one, and she received some positive
    feedback from coworkers; [Wang Depo. at 80 (a major told
    Wang she was "such a good pharmacist"), 120 (testifying that
    she had never received an unfavorable review);]

• Wang was denied training on Vancomycin, the training she did
    receive was substandard, and the only reason she failed the
    end of training assessment was based on a technicality; [id.
    at 29 (trainings by doctor were inconsistent and often
    interrupted), 31 (on the assessment, Wang simply "did not
    write the clinical note properly"); Pltf.'s Wang 6/9/11 FFC
    Trans. at 47-48 (Wang got different training from
    colleagues), 82 (poor training);] and

• Wang was reprimanded when she pointed out mistakes made by
    others, for example, an August 2010 counseling for missing
    another pharmacist's error – which she caught [Pltf.'s Wang
    6/9/11 FFC Trans. at 41, 73].

    Again, Wang's evidence consists solely of self-serving

conclusory statements, which are insufficient to make a prima

facie case for discrimination.  See Nilsson, 503 F.3d at 952;

Hernandez, 343 F.3d at 1116.  Moreover, Defendant offers ample

evidence that any adverse acts – and possibly some of the

negative feeling among the staff toward Wang - resulted from

ongoing and consistently poor performance.  Specifically, he

submitted evidence of numerous disciplinary infractions and

documentation of poor work performance in 2008 and 2009,

including (but not limited to):

• a July 2, 2008 Memorandum for Record by Maj. Masterson,
    explaining that Wang was on track to receive a negative
    evaluation, and then the evaluation, in August 22, 2008,

22

taking off points in the areas of Cooperation/Teamwork, Communication and Leadership; [Perry Wang. Decl., Exhs. 11-12;]

• another negative performance review on October 19, 2009, in which Maj. Masterson wrote that Wang's "cooperation and teamwork are amongst the worse [sic] of any pharmacist that I have ever worked with during my 18 years in pharmacy"; [id., Exh. 20 (Performance Appraisal Application);]

• in December 2008, a written reprimand, downgraded from a proposed seven-day suspension, for endangering patients in failing to properly complete nutritional orders; [id., Exhs. 9 (Notice of Proposed Suspension), 13 (Notice of Decision on Proposed Suspension);]

• another proposed suspension, including for "reckless abandonment of the duty without informing fellow staff of her whereabouts" and "verbal battles with fellow pharmacists and technicians[,]" on October 26, 2009; [id., Exh. 25 (Mem. for Record);]

• counselings by Maj. Masterson on December 30, 2008, and February 2, 2009, and by Capt. Raizada on January 28, 2009, October 7, 2009, and November 6, 2009, including for taking excessive lunch periods, causing verbal disturbances, disappearing from duty, and disrespect; [id., Exhs. 14-16, 23, 26 (all memoranda for record);]

• a determination, after a patient had a seizure because of a failure to be provided his prescription, that Wang's conduct fell below the standard of care, which led to a ten-day suspension; [id., Exhs. 30 (Notice of Proposed Suspension), 31 (Standard of Care Determination); 33 (Notice of Decision on Proposed Suspension);] and

• documented altercations with co-workers and supervisors on February 2, 2009, October 2, 2009, and October 21, 2009 [id., Exhs. 17-19 (Mem. for Record, email, and informal letter, describing incident in which Wang refused to perform certain tasks and coworkers were forced to do them), 21-22 (email from Masterson and Mem. for Record, regarding refusal to work with colleagues), 24 (Mem. for Record, counseling Wang for directing others to do her tasks)].

Regarding the Vancomycin training and testing, which Wang states was all pretextual, Defendant offers ample contemporaneous evidence showing that Tripler's staff was justified in taking action against Wang. The evidence shows that Wang missed training because she took annual sick leave (and not because it was denied to her) and then, after a make-up training and additional one-on-one trainings, she failed the administration test twice, where all other pharmacists (including a Chinese-American woman) passed. [Def.'s Wang 6/9/11 FFC Trans. at 80-81 (admitting she missed training due to sick leave); Perry Wang Decl., Exhs. 3 (Trans. of 10/21/10 FFC, excerpts of Captain Aparna Raizada testimony ("Def.'s Raizada 10/21/10 FFC Trans.")) at 67-68 (testifying that all pharmacists passed), 27 (Notice of Unacceptable Rating and Performance Improvement Plan ("PIP")), 28 (Performance Improvement Plan (PIP) Failure of Chiny Wang), 29 (Memorandum for Record) (describing inability to pass tests).] As a result, on January 19, 2010, Capt. Raizada put Wang on a Performance Improvement Plan and, in April 2010, met with Wang and recommended reassignment because Wang had not performed adequately. [PIP; Perry Wang Decl., Exhs. 6 (Trans. of 6/9/11 FFC, excerpts of Captain Aparna Raizada testimony ("Def.'s Raizada 6/9/11 FFC Trans.")) at 98-102, 118 (explaining that Wang got more training than any other pharmacist and still performed more poorly), 34 (Capt. Raizada met with Wang).]

24

The evidence further shows that, in addition to the poor Vancomycin assessments, Wang continued to receive reprimands for performing poorly on other job responsibilities, including a May 2010 counseling for inappropriate use of sick-call procedure, and an August 2010 counseling for failure to catch an error by a new pharmacist.  [Perry Wang Decl., Exhs. 35-37 (Mem. for Record regarding sick-call procedure), 40 (Mem. for Record regarding error).]  Defendant argues, and the Court agrees, that there is ample evidence supporting the Army's justifications and that Wang's termination was not pretextual.  [Id., Exhs. 42 (Notice of Proposed Removal), 43 (Notice of Decision on Proposed Removal).]  Since the Court finds that Wang has failed to set forth evidence that she was qualified for her position, that she was unfairly treated, or that the Army's justifications were pretextual, the Court GRANTS the Wang Motion as to Wang's claims for discrete acts of discrimination.  Thus the Court GRANTS summary judgment for Defendant on Count I.

D.  **Retaliation**

Wang does not provide any allegations in the Complaint to support Count II, and therefore the Court GRANTS the Wang Motion as to Count II for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  Even if she had, the only support she offers in her memorandum in opposition and CSOF are: a bald statement that after Wang made her EEO complaint, harassment intensified;

25

and the claim of an incident whereby Maj. Masterson bumped into Wang and did not apologize. [Wang Mem. in Opp. at 10; Bothwell Wang Decl., Exh. 3 (Trans. of 6/9/11 FFC, excerpts of Chiny Wang testimony ("Pltf.'s Wang 6/9/11 FFC Trans.") at 15 (Wang testifying regarding incident).] Even if she had alleged facts supporting retaliation in the Complaint, this is clearly not enough to create a genuine issue of material fact as to retaliation.

      **E.**   **<u>Summary</u>**

Since Wang has not exhausted her administrative remedies as to her claims for incidents prior to February 2010, she fails to make a prima facie case of discrimination, and she fails to state a claim for retaliation, the Court GRANTS the Wang Motion in its entirety.

<b><u>CONCLUSION</u></b>

On the basis of the foregoing, Defendant's Motion for Dismissal and Summary Judgment on the Claims of Plaintiff Tamanee Mundy, filed on May 13, 2014, and Defendant's Motion for Dismissal and Summary Judgment on the Claims of Plaintiff Chiny Wang, filed on May 14, 2014, are HEREBY GRANTED. The Clerk's Office is HEREBY DIRECTED to close this case on September 19, 2014, unless any of the plaintiffs file a timely motion for reconsideration.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 29, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**KELVIN BANKS, ET AL. VS. JOHN MCHUGH, ET AL; CIVIL 11-00798 LEK-KSC; ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF TAMANEE MUNDY; AND GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF CHINY WANG**